RONALD CRUZ, State Bar No. 267038
SHANTA DRIVER, Michigan Bar No. P65007*
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
1985 Linden Street
Oakland, CA 94607
(510) 875-4463 Fax: (313) 586-0089
ronald.cruz@ueaa.net, shanta.driver@ueaa.net
Attorneys for Plaintiff
*Pro hac vice application pending

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

LUPE VARGAS; POMPELLA CAMPOS; X.M., by her next friend MARIA DÍAZ; MARÍA DÍAZ; J.B., by his next friend LEOCADIA RAMOS; LEOCADIA RAMOS; B.L., by his next friend TED LEVITON; and TED LEVITON;

Plaintiffs,

vs.

BERKELEY UNIFIED SCHOOL DISTRICT, SUPERINTENDENT DONALD EVANS, BEATRIZ LEYVA-CUTLER, TY ALPER, JUDY APPEL, JOSH DANIELS, KAREN HEMPHILL, MARLEEN SACKS, LISA VAN THILLO, EVELYN TAMONDONG-BRADLEY, JANET LEVENSON, SAM PASAROW, SHANNON FIERRO, and DOES 1-10,

Defendants.

_____

CASE NO.:

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES**

- **42 U.S.C. § 1983 (First and Fourteenth Amendments)**
- **California Constitution Article 1, §§ 2, 7(a)**
- **Title VI of Civil Rights Act of 1964**
- **California Education Code ¶ 220**
- **California Education Code §§ 44110 et seq.**
- **California Civil Code § 52.1(b)**

**DEMAND FOR JURY TRIAL**
**CLASS ACTION**

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs, by and through their attorneys, UNITED FOR EQUALITY AND AFFIRMATIVE ACTION LEGAL DEFENSE FUND (UEAALDF), state as follows:

**INTRODUCTION**

1.  This class-action complaint is brought on behalf of current and former English Language Development (ELD) students of teacher Yvette Felarca in the Berkeley Unified School District ("BUSD", "the District"), who were targeted for their race and national origin, interrogated, and intimidated by BUSD officials in Fall 2016.

2.  Yvette Felarca is an immigrant Filipina-American BUSD teacher who is the target of a political witch-hunt by BUSD for fighting racism and defending immigrant rights in her off-duty time.

3.  On September 21, 2016, Defendant Marleen SACKS, an attorney for BUSD and other BUSD administrative personnel interrogated Plaintiff J.B., other ELD middle-school students, and attempted to interrogate B.L. in their non-native language of English, in the absence of and without notifying their parents. She did not tell them who she was or that she was an attorney. She interrogated these children about discussions of immigrant rights and slavery in Ms. Felarca's classroom and about their own political activities over the previous year.

4.  On October 11, 2016, six days after Plaintiffs Lupe VARGAS and X.M. publicly spoke on behalf of their former teacher to Defendant Superintendent EVANS and to Defendant Directors of the BUSD Board of Education, the District interrogated them about Ms. Felarca, their own political activities, and asked them prying questions to attempt to ascertain their immigration status and the immigration status of their families. VARGAS and X.M. are Mexican American.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                    2

5.   The District has conducted racially-targeted interviews to intimidate Latina/o, black, and immigrant students from exercising their free speech rights.

6.   The Plaintiffs bring this suit to defend the dignity and equality of immigrant students and their families in BUSD, stop discrimination, and defend freedom of speech.

## JURISDICTION AND VENUE

7.   This is a civil rights action arising from Defendants' actions against Plaintiffs beginning September 21, 2016 in Berkeley, California in Alameda County. This action is brought pursuant to: 42 U.S.C. § 1983; the First and Fourteenth Amendments to the United States Constitution; Title VI of the Civil Rights Act of 1964; the California Constitution; California Education Code § 220; §§ 44110 et seq.; California Civil Code § 52.1(b); state common law; and related state law statutes, codes, and regulations.

8.   Plaintiffs reside in Alameda County. All the Defendants reside and/or work in Alameda County. The events, acts, and/or omissions complained of herein occurred in Alameda County, California, and this action is properly assigned to the U.S. District Court of California, Northern District.

9.   This Court has subject matter jurisdiction under 28 USC § 1331 and 28 USC § 1343(3). This Court has supplemental jurisdiction of related state claims from the same case or controversy under 28 USC § 1367(a).

10.   This action is timely filed within all applicable statutes of limitation.

## INTRADISTRICT ASSIGNMENT

11. A substantial part of the events which give rise to this claim occurred in Alameda County, making assignment to the Oakland Division appropriate under Civil L.R. 3-2(d).

**PARTIES**

12. Plaintiff Lupe VARGAS is a Latina twelfth-grader at the Berkeley Unified School District's ("BUSD's") Berkeley High School. Her family is from Mexico. She was one of Felarca's English Language Development (ELD) English and History students in 2011-12. She brings these claims on her own behalf and as a Private Attorney General to vindicate constitutional rights of the highest importance.

13. Plaintiff Pompella CAMPOS is the mother of Lupe VARGAS and an immigrant from Mexico. She brings these claims on her own behalf and as a Private Attorney General to vindicate constitutional rights of the highest importance.

14. X.M. is a minor and is represented by her next friend, María DÍAZ. X.M. is a Latina ninth-grader at Berkeley High School. She and her family are from Mexico. She was one of Felarca's ELD English and History students in 2014-15. She brings these claims on her own behalf and as a Private Attorney General to vindicate constitutional rights of the highest importance.

15. Plaintiff María DÍAZ is the mother of X.M. and an immigrant from Mexico. She brings these claims on her own behalf and as a Private Attorney General to vindicate constitutional rights of the highest importance.

16. J.B. is a minor and is represented by his next friend Leocadia RAMOS. J.B. is a Latino seventh-grader at BUSD's King Middle School. He and his family are from Peru. J.B. is one of Felarca's current ELD English and History students. He brings

1  these claims on his own behalf and as a Private Attorney General to vindicate

2  constitutional rights of the highest importance.

3  17.  Plaintiff Leocadia RAMOS is the mother of J.B. and an immigrant from Peru. She

4  brings these claims on her own behalf and as a Private Attorney General to

5  vindicate constitutional rights of the highest importance.

6  18.  B.L. is represented by his next friend Ted LEVITON. B.L. is a minor and a

7  seventh-grader at BUSD's King Middle School. He and his family are from the

8  Ivory Coast. B.L. is one of Felarca's current ELD English and History students. He

9  brings these claims on his own behalf and as a Private Attorney General to

10  vindicate constitutional rights of the highest importance.

11  19.  Plaintiff Ted LEVITON is the father of B.L.. He is an immigrant from the Ivory

12  Coast. He brings these claims on his own behalf and as a Private Attorney General

13  to vindicate constitutional rights of the highest importance.

14  20.  Defendant Berkeley Unified School District ("BUSD") is a public entity and an

15  educational service agency established and maintained by the laws and constitution

16  of the State of California, and owns, operates, manages, directs, and employs and/or

17  is responsible for other Defendants in this action. Pursuant to California

18  Government Code § 815.2, Defendant BUSD is vicariously liable for state law torts

19  of its employees and agents, including but not limited to those named as Defendants

20  herein.

21  21.  Defendant Dr. Donald EVANS was at all material times and is Superintendent of

22  BUSD and acting within the course and scope of that employment. He reports

23  directly to the Directors of the BUSD Board of Education. Defendant Dr. EVANS

24  is sued in his individual and official capacities.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES          5

22. Defendant Beatriz LEYVA-CUTLER was at all material times and is President and a Director of the BUSD Board of Education. Defendant LEYVA-CUTLER is sued in her individual and official capacities.

23. Defendant Ty ALPER was at all material times and is a Director of the BUSD Board of Education. Defendant ALPER is sued in his individual and official capacities.

24. Defendant Judy APPEL was at all material times and is a Director of the BUSD Board of Education. Defendant APPEL is sued in her individual and official capacities.

25. Defendant Josh DANIELS was at all material times and is a Director of the BUSD Board of Education. Defendant DANIELS is sued in his individual and official capacities.

26. Defendant Karen HEMPHILL was at all material times and is a Director of the BUSD Board of Education. Defendant HEMPHILL is sued in her individual and official capacities.

27. Defendant Marleen SACKS was at all material times counsel and an agent for BUSD who interrogated many of the child Plaintiffs. She is sued in her individual capacity.

28. Defendant Lisa VAN THILLO was at all material times and is BUSD Assistant Superintendent of Human Resources. She reports directly to Defendant BUSD Superintendent Dr. Donald EVANS. She is sued in her individual and official capacities.

29. Defendant Evelyn TAMONDONG-BRADLEY was at all material times and is BUSD Director of Personnel Services. She reports directly to Defendant VAN THILLO. She is sued in her individual and official capacities.

30. Defendant Janet LEVENSON was at all material times and is Principal of BUSD's King Middle School. She is sued in her individual and official capacities.

31. Defendant Sam PASAROW was at all material times and is Principal of BUSD's Berkeley High School. He is sued in his individual and official capacities.

32. Defendant Shannon FIERRO was at all material times and is a Vice Principal of BUSD's Berkeley High School. She is sued in her individual and official capacities.

33. The true names and capacities of Defendants sued herein as DOES 1-10 are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to show these Defendants' true names and capacities when they are ascertained. At all material times, each of the DOE Defendants was an employee and/or agent of Defendant BUSD, and at all material times acted within the course and scope of that relationship. Plaintiff is informed and believes, and thereon alleges, that each Defendant so named was negligently, wrongfully, or otherwise responsible in some manner for the damages sustained by Plaintiff as set forth herein. Further, one or more DOE Defendants was at all material times responsible for the supervision and discipline of other Defendants, including DOE Defendants.

34. Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein was negligently, intentionally, recklessly, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused damages to Plaintiff.

35. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all material times, an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to other Defendants, and ratified and/or authorized the acts or omissions as alleged herein, except as may be hereafter otherwise specifically alleged. At all material times, each Defendant was both jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional and statutory rights and other harm.

36. At all material times, each Defendant acted under color of the laws, statutes, ordinances, policies, practices, customs, and usages of the State of California and BUSD.

37. Plaintiff is informed and believes, and thereon alleges, that at all material times, Defendants, and each of them, were and are persons and entities whose conduct is governed and regulated by all California laws and statutes, including the common law, the California Constitution, and the public policy of the State of California.

38. Plaintiff is informed and believes, and thereon alleges, that the unlawful actions complained of herein, as a result of which Plaintiff sustained the damages enumerated below, were and are violations of the laws of the State of California and the United States.

39. This action is timely filed within all applicable statutes of limitation.

**FACTUAL ALLEGATIONS**

40. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

41. Rather than reflecting the historic commitment of the citizens of Berkeley to immigration and equality, the BUSD administration has been reducing the enrollment of minorities and immigrants in recent years. BUSD has recently begun home visits and adopted new application requirements to reduce access to minority, immigrant, and low-income students who look to BUSD for an equal, quality education. BUSD's leaders are abandoning the District's historical role as a pioneer in integration and equality, and have been increasingly less accountable to the minority, immigrant, and low-income students and families who give the District its dynamic and progressive character.

42. On June 29, 2016, BUSD officials Defendants Superintendent EVANS and Board of Education President Beatriz LEYVA-CUTLER issued a public statement communicating their intention to pursue disciplinary action against English Language Development (also known as English as a Second Language), English, and History teacher Yvette Felarca. This was clear retaliation for protesting the Nazis and other racists in Sacramento during her off-duty time three days earlier. On June 30, 2016, the District sent her a disciplinary letter that expressed hostility to her political views, political affiliations, and off-duty political activities supporting equality for immigrants and in favor of affirmative action.

43. The contract between BUSD and Felarca's union, the Berkeley Federation of Teachers (BFT), protects academic freedom and freedom of belief within BUSD. It mandates a climate of openness and acceptance of diversity; it does not authorize interrogations and fishing expeditions with children to censor any particular point of

view. The District's witch-hunt of Felarca also includes her immigrant students and violates these precepts. The contract states:

> Teachers shall be afforded the broadest freedom to teach within the State law, since evaluation of multiple sides of controversial issues is one of the means by which students learn how to search for truth and develop the increased capacity to make sound and mature judgments. The controversial nature of a subject shall not bar its discussion in the schools. In the interest of the freedom to teach, all employees shall be encouraged to express all views, including their own, honestly and in good faith. To this end the Board will provide a teaching and learning atmosphere which is free from unreasonable censorship and artificial restraint upon free inquiring, learning and academic freedom.

Interrogations of Martin Luther King Middle School immigrant students

44.   On the morning of September 21, 2016, District officials began interrogating Felarca's current and former ELD students at King Middle School. That day, Defendant Marleen SACKS, an attorney representing BUSD, had BUSD officials pull the children from their classrooms and interrogated the children without notifying or obtaining consent from their parents.

45.   All the children were current or former ELD students of Felarca, for whom English was a second language. Most were born outside the United States. SACKS questioned the students in their non-native language of English.

46.   Plaintiff J.B. is a seventh-grader from Peru and is one of Felarca's current ELD students. On September 21, 2016, he was summoned out of his class and told to report to the school's office, where SACKS interrogated him. At no point beforehand was his mother, Plaintiff Leocadia RAMOS, or his family contacted to inform them about the interrogation or to obtain their consent.

47.   J.B., for whom English was his second language, was intimidated and terrified. SACKS opened the meeting by telling him that he could not tell his friends,

1    teachers, or anyone else about the interview. He felt the entire time like he was in

2    trouble.

3    48.   SACKS began to interrogate J.B. about Felarca. J.B. had Felarca as his teacher

4          starting in sixth grade. SACKS asked him what discussions they had had about

5          immigrant rights and slavery in Felarca's classroom. She asked him to relate in

6          detail any and all political protests he had participated in, when they occurred,

7          where they occurred, and what the messages of the protests were.

8    49.   SACKS made clear that discussions and activity about immigrant rights and

9          opposing racism inside and outside the classroom were not acceptable to the

10         District.

11   50.   J. B. left the interview confused, conflicted, and very afraid. He worried that he

12         would get in trouble if he told his mother, but he told her anyway because he was

13         extremely upset and hurt.

14   51.   At least six other children besides J.B. were summoned and brought before

15         Defendant SACKS to be interrogated on September 21, 2016. Upon information

16         and belief, nearly all, if not all, were current and former ELD students of Ms.

17         Felarca. The children came out of the interviews upset, scared, and confused.

18   52.   Plaintiff B.L. was summoned out of his math class to the office for an interrogation

19         on September 21, 2016. SACKS told him to return to class and said that he would

20         be questioned alone later. He also was scared that he was in trouble. His father,

21         Plaintiff Ted LEVITON, and his family were never contacted beforehand to inform

22         them about an interrogation or to obtain their consent.

23   53.   Plaintiff LEVITON complained about this treatment to the BUSD Board of

24         Education that night.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                    11

54. The District made sure to send a message of political intimidation to the family of B.L.. A few days later, a representative of the District called Ted LEVITON and told him that any political protests that B.L. participated in were not sanctioned by the District. Ted LEVITON was already aware of this, and the District had no business contacting him about political protests that he or his son were to participate in outside of school hours.

55. The District placed Felarca on involuntary administrative leave on the afternoon of September 21, 2016. For the next six weeks, B.L., J.B., and other ELD students of Felarca were denied a teacher who was trained to teach ELD students. They underwent the trauma and disruption of losing a teacher who had had a positive impact on them, and made to feel that the positive interactions and learning opportunities that they had had with Felarca in her classroom were prohibited by the District.

56. Upon information and belief, between September 21, 2016 and November 2, 2016, District officials interrogated or informed that it intended to interrogate twenty-one of Felarca's twenty-two ELD students at King Middle School, as well as several of her former ELD students who were eighth graders there. The District did not do so with any of her current or former non-ELD students.

57. The BUSD officials who conducted these interrogations included Defendants Marleen SACKS, BUSD Assistant Superintendent of Human Resources Lisa VAN THILLO, BUSD Director of Personnel Services Evelyn TAMONDONG-BRADLEY, King Middle School Principal Janet LEVENSON, and other DOE individuals. These school officials and agents acted under the direction and/or supervision of Superintendent EVANS and Defendant directors of the BUSD Board

1    of Education. The interviews at King Middle School were conducted under

2    Defendant LEVENSON's authority and on her campus.

3    Interrogations and threats against Berkeley High School immigrant students

4    58.    On October 5, 2016, two Latina Berkeley High School students who were former

5    ELD students of Felarca, twelfth-grader Plaintiff Lupe VARGAS and ninth-grader

6    Plaintiff X.M., spoke to Defendant BUSD Superintendent EVANS and Defendant

7    Berkeley Board of Education directors Beatriz LEYVA-CUTLER, Ty ALPER,

8    Judy APPEL, Josh DANIELS, and Karen HEMPHILL during the public comment

9    period of a Board of Education meeting. They demanded that BUSD allow Felarca

10    back into the classroom and stop its political witch-hunt against her.

11    59.    Both VARGAS and X.M. have families who are from Mexico.

12    60.    Six days after they spoke out, VARGAS, X.M., and a third Latina student with

13    whom they had once attended an immigrant rights protest were each individually

14    pulled from their classrooms by BUSD officials at Berkeley High School. They

15    were interrogated about Felarca and their own political activities. X.M. and

16    VARGAS felt threatened by the District officials. The interrogations pried into their

17    political activities, questions about their English ability, immigration status, and

18    family members' national origin and immigration status.

19    61.    X.M., VARGAS, and the other Berkeley High School students whom the District

20    interrogated were questioned with the intent of intimidating them for their political

21    activities on behalf of immigrant rights and/or in defense of their teacher, and

22    against their ethnicity and immigration status.

23

24

62. On the morning of October 11, 2016, Defendants VAN THILLO and Berkeley High School Vice Principal Shannon FIERRO summoned X.M. out of her class and interrogated her for two class periods.

63. X.M. was a ninth grader and had been a student of FELARCA in seventh and eighth grade. VAN THILLO and FIERRO asked X.M. whether they had discussed immigration, slavery, gender equality, or protests in Felarca's class. They asked X.M. what protests she had participated in and what messages they advocated.

64. Defendants VAN THILLO and FIERRO asked X.M. where she lived. They also asked X.M. where she was born, where her siblings and mother were born. They asked her if she had legal status in the United States. They asked her how long she had been in this country. These questions were intended to intimidate X.M. and her family from expressing their political views and activities in support of immigrant rights and in support of their former teacher.

65. X.M. was alarmed by the questions, since these were questions that are commonly asked by immigration officials rather than by school officials. She tried to remain calm throughout the interrogation but was afraid. When she told her mother about what happened, her mother was alarmed and scared.

66. The interviewers also directed X.M. not to tell anyone else about the interrogation.

67. After the interview, X.M. was scared for her family and upset.

68. Later that same day, Defendants VAN THILLO and FIERRO interrogated Plaintiff Lupe VARGAS, a Latina twelfth-grader at Berkeley High School whose family is from Mexico.

69. A mere ten minutes before that interview, a representative from the District called VARGAS' mother, Plaintiff Pompella CAMPOS. This individual asked CAMPOS

1   for her consent to question VARGAS about a "teacher at school." VARGAS had

2   not had Felarca as a teacher for more than four years, and CAMPOS thought the

3   questioning would be about another teacher. If she had known that the interrogation

4   was to investigate Felarca, CAMPOS would have refused. The phone call obtained

5   CAMPOS' consent on false pretenses and was timed and designed not to alert

6   VARGAS that she was about to be interrogated about FELARCA.

7   70.   On October 11, 2016, VARGAS was told by her teacher to report to the office.

8         VARGAS thought she was being asked to see her counselor. While she waited at

9         the counselor's office, Defendant FIERRO invited VARGAS into her room.

10        FIERRO looked at VARGAS' grades with her and commented that they looked

11        good, making VARGAS believe that the she was in a meeting to discuss college.

12  71.   Defendant VAN THILLO walked into the room with a laptop and began to

13        interrogate VARGAS about Felarca. She asked VARGAS what grades she had

14        received in Felarca's class four years ago. She asked VARGAS about Felarca's

15        protest activities, about VARGAS' own participation in protests, whether students

16        in the class talked about protests, what books were in Felarca's room and whether

17        there were books there "about protests," and whether "controversial words and

18        political terms" were used. VAN THILLO asked VARGAS about school field trips

19        she had attended with Felarca that VAN THILLO knew had been approved by the

20        District.

21  72.   VAN THILLO asked VARGAS about a protest she had attended in Fall 2015 for

22        which she had parental permission, years after no longer being Felarca's student

23        and a on day that she did not have school. Despite knowing that she had her

24        parents' permission to attend the protest, VAN THILLO asked her intimate details

1    about that day, including whether she ate pizza that day, making clear that the

2    District had investigated and was interested in her participation in that protest, and

3    would investigate her if she attended future protests.

4    73.   VAN THILLO then asked VARGAS where her parents came from, and whether

5          they spoke English. VARGAS understood these questions as attempts to intimidate,

6          scare, and threaten VARGAS and her family.

7    74.   During and after the interrogation, VARGAS was distraught and angry. She was

8          manipulated into participating in a surprise interrogation, and scared because she

9          had been singled out for questioning. She was scared that the school would do

10         something against her family. She was scared that the school might arrest her for

11         speaking out at School Board meetings. VARGAS was beside herself that her

12         words might lead to her little brother or other members of her family getting

13         interrogated, or worse. She called her mother right away, distraught.

14   75.   VARGAS went to a staff member she trusted and, with that staff member, returned

15         to FIERRO to complain about the interrogation. FIERRO took the staff member

16         aside and spoke to her outside of VARGAS' presence. FIERRO continued to

17         attempt to intimidate VARGAS and told her that she was in trouble because she had

18         told someone else about the interview, and that FIERRO would have to report her to

19         VAN THILLO.

20   76.   VARGAS told FIERRO that she had manipulated VARGAS and demanded that her

21         interview not be used in any way against herself, her former teacher, or her family.

22         FIERRO proceeded to type things that VARGAS said, and VARGAS demanded

23         that she stop. FIERRO said that the District might interrogate VARGAS' brother,

24         too.

77. BUSD officials conducted interrogations of other Berkeley High School students who had formerly been ELD students of Felarca. Upon information and belief, nearly all, if not all, these students were Latina/o. These interrogations were conducted under Defendant Berkeley High School Principal PASAROW's authority and on his campus.

78. Defendants' actions, beginning with the witch-hunt of Felarca and continuing with the racially-targeted interrogations of Felarca's current and former ELD students, send a hostile message to immigrant and Latina/o students and parents that they would be targeted and driven out of BUSD if they acted against racism and defended immigrant rights.

79. Defendants targeted and threatened Plaintiffs VARGAS, X.M., and other students because they had lawfully exercised their right to free speech.

80. On information and belief, Defendant BUSD, its policymakers and managing agents and employees including, but not limited to, Defendants EVANS, LEYVA-CUTLER, ALPER, APPEL, DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY, LEVENSON, PASAROW, and FIERRO, and other as-yet unknown employees and agents of Defendants BUSD, negligently, recklessly, otherwise wrongfully and with deliberate indifference to the rights BUSD teachers and staff, including Plaintiff FELARCA, failed to properly screen, investigate, hire, train, supervise, and/or discipline unknown employees and Defendants.

81. Defendants' actions and omissions were done under color of law and within the course and scope of their employment, and were done pursuant to unconstitutional customs, policies, and procedures of Defendants BUSD.

82. Defendant BUSD is also responsible for Plaintiffs' injuries through its own acts and omissions, negligent or otherwise, by failing to properly and adequately investigate, train, supervise, monitor, instruct, and discipline their employees, officers, and other personnel, including the officers identified herein.

83. At all material times, and alternatively, the actions and omissions of each Defendant were intentional, knowing, wanton and/or willful, reckless, malicious, deliberately indifferent to and with conscious disregard for the rights of Plaintiffs and others, done with oppression, fraud, malice, actual malice, grossly negligent, negligent, and objectively unreasonable.

84. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs sustained the following injuries and damages, past and future, among others:

    a.    Severe emotional distress;

    b.    Lost educational time;

    c.    Violation of federal and California constitutional rights;

    d.    All compensatory and punitive damages, attorneys' fees, costs, and penalties, recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52.1 and 3294; California Code of Civil Procedure § 1021.5; and as otherwise allowed under California and United States statutes, codes, and common law.

## CLASS ACTION ALLEGATIONS

85. This action may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23.

86. Plaintiffs bring this action as a class action on behalf of themselves and the following classes ("the Classes"): (1) a "Current ELD Students" class of current

ELD students of Felarca who were interrogated and/or informed of a pending interrogation by BUSD officials in Fall 2016, (2) a "Current ELD Parents" class of parents and guardians of students in #1, and (3) a "Former ELD Students" class of former ELD students of Felarca who were interrogated and/or informed of a pending interrogation by BUSD officials in Fall 2016, and (4) a "Former ELD Parents" class of parents and guardians of students in #3.

87. Excluded from the Classes are the Defendants, and all officers, directors, employees, or agents of the Defendants.

88. The likelihood of all individual members of the Classes prosecuting separate claims is remote, particularly in light of the Defendants' intimidating actions against them.

89. The members of the Classes are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact size or identities of the proposed Classes, since such information is in the exclusive control of Defendants.

90. Plaintiffs reserve the right to modify the Classes and the class period based on the results of discovery.

91. There are common questions of law or fact, including:

    a.    The nature, scope and operations of BUSD's interrogations of students as part of its investigation of Felarca;

    b.    The process by which BUSD selected students for interrogation

    c.    The process by which BUSD obtained parental consent, if any, before conducting interrogations of students

    d.    Whether Defendants' conduct violated Title VI of the Civil Rights Act of 1964; and

e.    Whether Defendants' conduct violated the First Amendment and

California Education Code § 220.

92.   Plaintiffs' claims are typical of the members of the Classes because Plaintiffs and

all members of the Classes were injured by the same wrongful practices as

described in this Complaint. Plaintiff's claims arise from the same practices and

course of conduct that gives rise to the claims of the Classes' members, and are

based on the same legal theories.

93.   Plaintiffs will fairly and adequately represent the interests of the members of the

Classes. Plaintiffs' interests are the same as, and not in conflict with, those of the

other members of the Classes.

94.   Questions of law or fact common to the members of the Classes predominate and a

class action is superior to other available methods for the fair and efficient

adjudication of this lawsuit, because individual litigation of the claims of all

members of the Classes is economically unfeasible and procedurally impracticable.

The likelihood of individual members of the Classes prosecuting separate claims is

remote and, even if every Class member could afford individual litigation, the court

system would be unduly burdened by individual litigation of such cases.

Individualized litigation would also present the potential for varying, inconsistent,

or contradictory judgments and would magnify the delay and expense to all parties

and to the court system resulting from multiple trials of the same factual issues.

Plaintiffs know of no difficulty to be encountered in the management of this action

that would preclude its maintenance as a class action, and certification of the

Classes is proper.

95. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Classes would be proper on the additional ground that Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to members of each Class as a whole.

**COUNT ONE: Racial and National Origin Discrimination, Hostile Educational Environment, and Retaliation**
**(Fourteenth Amendment to U.S. Constitution; Article I, Section 31 of California Constitution, 42 U.S.C. § 1983)**
**AGAINST DEFENDANTS B.U.S.D., EVANS, LEYVA-CUTLER, ALPER, APPEL, DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY, LEVENSON, PASAROW, FIERRO, and DOES 1-10**

96. Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

97. The Fourteenth Amendment to the U.S. Constitution prohibits the States from "deny[ing]… any person within its jurisdiction the equal protection of the laws." Section 1983 creates a private right of action against "[e]very person who, under color of any statute… of any State… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

98. The California Constitution prohibits the State from "discriminat[ing] against… any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting." Cal. Const., art. I, § 31.

99. The Plaintiffs Lupe VARGAS, Pompella CAMPOS, X.M., María DÍAZ, J.B., Leocadia RAMOS, B.L., Ted LEVITON, and the Classes are immigrants and/or come from families who are immigrants, and/or are perceived to be such.

100. The Plaintiffs Lupe VARGAS, Pompella CAMPOS, X.M., María DÍAZ, J.B., and Leocadia RAMOS, are Latina/o. B.L. and Ted LEVITON are black immigrants from Africa. The vast majority of the Classes are Latina/o, Asian American, and/or African American.

101. Upon information and belief, nearly all, if not all the students whom the Defendants interrogated between September 21, 2016 and November 2, 2016 were current and former ELD students of Felarca.

102. Defendants selected the student Plaintiffs for interrogation because of their race, perceived race, national origin, and/or perceived national origin.

103. Defendants selected the most vulnerable members of BUSD's student population—minority and immigrant students—for interrogation.

104. The interrogations of Felarca's current and former immigrant students were in retaliation for her anti-racist protests during off-duty hours. They conveyed a message of racist hostility, fostering a racially hostile environment within BUSD and denying student Plaintiffs equal access to education based on their race and national origin.

105. The interrogations of Plaintiffs VARGAS, X.M., and other students were retaliation for exercising their rights to complain about racial and national origin discrimination.

106. Interrogating Plaintiffs VARGAS and X.M. about where they were born and about the citizenship and English proficiency of their family members was a racist threat

1    and was done because of their race, national origin, and/or perceived national

2    origin.

3  107.  The interrogations were intentionally conducted without the children's parents

4    present, with deliberate indifference toward toward these minority and immigrant

5    children's right not to be intimidated by their school officials and the right of their

6    parents to be partners in and engaged in their children's education.

7  108.  As a direct and proximate result of the acts and/or omissions of Defendant BUSD,

8    its officials, its policies, and/or practices, Plaintiffs sustained damages as set forth at

9    ¶ 84 above.

10  109.  Defendants EVANS, LEYVA-CUTLER, ALPER, APPEL, DANIELS,

11    HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY, LEVENSON,

12    PASAROW, FIERRO, and DOES 1-10 subjected Plaintiffs to their wrongful

13    conduct and deprived them of rights described herein knowingly, maliciously, and

14    with conscious and reckless disregard for whether the rights of Plaintiffs and others

15    would be violated by their acts and/or omissions.

16  110.  The conduct of Defendants EVANS, LEYVA-CUTLER, ALPER, APPEL,

17    DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY,

18    LEVENSON, PASAROW, FIERRO, and DOES 1-10 entitles Plaintiffs to

19    exemplary and punitive damages and penalties allowable under 42 U.S.C. § 1983

20    and California law.

21  111.  As a direct and proximate result of the acts and/or omissions of Defendants as set

22    forth above, Plaintiffs sustained damages as described in ¶ 84.

23

24

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES          23

112. Plaintiffs are entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988(b), Cal. Code Civ. Proc. § 1021.5 and other applicable California codes and law.

**COUNT TWO: Racial and National Origin Discrimination, Hostile Educational Environment, and Retaliation**
**(Title VI of Civil Rights Act of 1964; California Education Code § 220)**
**AGAINST DEFENDANT B.U.S.D.**

113. Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

114. Title VI of the Civil Rights Act of 1964 states: "[N]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

115. BUSD receives federal funds.

116. Furthermore, California Education Code 220 states: "No person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation."

117. Upon information and belief, nearly all, if not all the students whom the Defendants interrogated between September 21, 2016 and November 2, 2016 were current and former ELD students of Felarca.

118. Defendants selected the student Plaintiffs for interrogation because of their race, perceived race, national origin, and/or perceived national origin.

119. The interrogations of Felarca's current and former immigrant students were in retaliation for her anti-racist protests during off-duty hours. They conveyed a message of racist hostility, fostering a racially hostile environment within BUSD

1  and denying student Plaintiffs equal access to education based on their race and

2  national origin.

3  120. Interrogating Plaintiffs VARGAS and X.M. about where they were born and about

4  the citizenship and English proficiency of their family members was a threat and

5  was done because of their race, national origin, and/or perceived national origin.

6  121. The interrogations of Plaintiffs VARGAS, X.M., and other students were retaliation

7  for exercising their rights to complain about racial and national origin

8  discrimination.

9  122. The interrogations were intentionally conducted without the children's parents

10  present, with deliberate indifference toward toward these minority and immigrant

11  children's right not to be intimidated by their school officials and the right of their

12  parents to be partners in and engaged in their children's education.

13  123. As a direct and proximate result of the acts and/or omissions of Defendant BUSD as

14  set forth above, Plaintiffs sustained damages as described in ¶ 84.

15  124. Plaintiffs are entitled to reasonable costs and attorneys' fees under 42 U.S.C. §

16  1988(b), Cal. Code Civ. Proc. § 1021.5 and other applicable California codes and

17  law.

18

19  **COUNT THREE: Violation of Freedom of Speech**
**(First Amendment to U.S. Constitution; Article I, Section 2 of California**
**Constitution, 42 U.S.C. § 1983)**

20  <u>**AGAINST DEFENDANTS B.U.S.D., EVANS, LEYVA-CUTLER, ALPER, APPEL,**</u>
<u>**DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY,**</u>

21  <u>**LEVENSON, PASAROW, FIERRO, and DOES 1-10**</u>

22  125. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth

23  here.

24

126. The First and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the California Constitution protect the rights of freedom of speech and freedom of association.

127. In the United States, "it can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 506 (1969).

128. Students have the right to speak in their classroom and participate in the protests in non-school hours free from restrictions, intimidation, and retaliation from the District.

129. Defendants sent a hostile message to Plaintiffs that it disfavored and/or prohibited speech against racism in support of immigrant rights inside and outside the classroom.

130. Defendants singled out BUSD's minority and immigrant students for interrogation, in order to intimidate the most vulnerable students and families in the District and to chill the free speech of those students and families who have the most grievances with the District.

131. The interrogations of Plaintiffs VARGAS, X.M., and other students were retaliation for exercising their rights to complain about racial and national origin discrimination.

132. The interrogations of Felarca's current and former immigrant students conveyed a message of hostility toward Plaintiffs' right to engage in speech against racism and for immigrant rights.

133. The interrogations of student Plaintiffs create a chilling effect on their parents' First Amendment rights by making clear that they or their children would be victimized

1    by the District if they or their parents engaged in speech against racism, for

2    immigrant rights, and/or against the District.

3    134. As a direct and proximate result of the acts and/or omissions of Defendant BUSD,

4    its officials, its policies, and/or practices, Plaintiffs sustained damages as set forth at

5    ¶ 84 above.

6    135. Defendants EVANS, LEYVA-CUTLER, ALPER, APPEL, DANIELS,

7    HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY, LEVENSON,

8    PASAROW, FIERRO, and DOES 1-10 subjected Plaintiffs to their wrongful

9    conduct and deprived them of rights described herein knowingly, maliciously, and

10   with conscious and reckless disregard for whether the rights of Plaintiffs and others

11   would be violated by their acts and/or omissions.

12   136. The conduct of Defendants EVANS, LEYVA-CUTLER, ALPER, APPEL,

13   DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY,

14   LEVENSON, PASAROW, FIERRO, and DOES 1-10 entitles Plaintiffs to

15   exemplary and punitive damages and penalties allowable under 42 U.S.C. § 1983

16   and California law.

17   137. As a direct and proximate result of the acts and/or omissions of Defendants as set

18   forth above, Plaintiffs sustained damages as described in ¶ 84.

19   138. Plaintiffs are entitled to reasonable costs and attorneys' fees under 42 U.S.C. §

20   1988(b), Cal. Code Civ. Proc. § 1021.5 and other applicable California codes and

21   law.

22

23   **COUNT FOUR: Parents' and Guardians' Right to Participate in the Education of
      their Children (California Education Code §§ 51100)**

24

1     **AGAINST DEFENDANTS B.U.S.D., EVANS, LEYVA-CUTLER, ALPER, APPEL,**
**DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY,**
2     **LEVENSON, PASAROW, FIERRO, and DOES 1-10**

3    139. Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth

4        here.

5    140. California Education Code 51101(a) states: "[T]he parents and guardians of pupils

6        enrolled in public schools have the right and should have the opportunity, as

7        mutually supportive and respectful partners in the education of their children within

8        the public schools, to be informed by the school, and to participate in the education

9        of their children, which includes "hav[ing] a school environment for their child that

10       is safe and supportive of learning."

11   141. California Education Code 51101(b) states: "[P]arents and guardians of pupils,

12       including those parents and guardians whose primary language is not English, shall

13       have the opportunity to work together in a mutually supportive and respectful

14       partnership with schools... The policy shall include... [p]articipating, as appropriate,

15       in decisions relating to the education of their own child or the total school

16       program."

17   142. Furthermore, BUSD Board Policy 6020 (Parent Involvement) states: "[T]he

18       Superintendent or designee shall work with staff and parents/guardians to develop

19       meaningful opportunities at all grade levels for parents/guardians to be involved in

20       district and school activities [and] advisory, decision-making, and advocacy roles."

21   143. These rights vest in all parents and guardians of BUSD's schoolchildren, regardless

22       of race or national origin.

23

24

144. Interrogations by District attorneys and officials of minority and immigrant children creates a hostile educational environment and fosters mistrust and fear of school authority that harms the children's equal right to education.

145. Defendants did not inform or obtain consent from the parent and guardian Plaintiffs to interrogate their children, and/or they obtained such consent under false pretenses.

146. None of the parent and guardian Plaintiffs consented, and never would have agreed, to the District threatening or intimidating their children's rights and/or threatening their families on the basis of their immigration status or perceived immigration status.

147. None of the parent and guardian Plaintiffs were consulted about whether they wanted Ms. Felarca to be disciplined or removed from BUSD, but still the District proceeded with using their children for exactly such purpose.

148. On the basis of these interrogations of their children, the Current ELD Students and the Current ELD Parents were denied a qualified teacher to teach their ELD children from September 22, 2016 through November 1, 2016.

149. As a direct and proximate result of the acts and/or omissions of Defendant BUSD, its officials, its policies, and/or practices, the Current ELD Students, Current ELD Parents, and Former ELD Parents sustained damages as set forth at ¶ 84 above.

150. Defendants EVANS, LEYVA-CUTLER, ALPER, APPEL, DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY, LEVENSON, PASAROW, FIERRO, and DOES 1-10 subjected Plaintiffs to their wrongful conduct and deprived them of rights described herein knowingly, maliciously, and

1   with conscious and reckless disregard for whether the rights of Plaintiffs and others

2   would be violated by their acts and/or omissions.

3   151. The conduct of Defendants EVANS, LEYVA-CUTLER, ALPER, APPEL,

4   DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY,

5   LEVENSON, PASAROW, FIERRO, and DOES 1-10 entitles Plaintiffs to

6   exemplary and punitive damages and penalties allowable under 42 U.S.C. § 1983

7   and California law.

8   152. As a direct and proximate result of the acts and/or omissions of Defendant BUSD as

9   set forth above, Plaintiffs sustained damages as described in ¶ 84.

10  153. Plaintiffs are entitled to reasonable costs and attorneys' fees under Cal. Code Civ.

11  Proc. § 1021.5 and other applicable California codes and law.

12  **COUNT FIVE: Violation of the Bane Act**
    **(California Civil Code § 52.1(b))**

13  **AGAINST DEFENDANTS B.U.S.D., EVANS, LEYVA-CUTLER, ALPER, APPEL,**
    **DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY,**

14  **LEVENSON, COPLAN, and DOES 1-10**

15  154. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth

16  here.

17  155. The Bane Act, California Civil Code § 52.1, states: "Any individual whose exercise

18  or enjoyment of rights secured by the Constitution or laws of the United States, or

19  of rights secured by the Constitution or laws of this state, has been interfered with,

20  or attempted to be interfered with [by threat, intimidation, or coercion], may

21  institute and prosecute in his or her own name and on his or her own behalf a civil

22  action for damages, including, but not limited to, damages under Section 52,

23  injunctive relief, and other appropriate equitable relief to protect the peaceable

24  exercise or enjoyment of the right or rights secured." Cal. Civ. Code § 52.1(b).

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES          30

156. As a direct and proximate result of the acts and/or omissions of Defendants BUSD, EVANS, LEYVA-CUTLER, ALPER, APPEL, DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY, LEVENSON, PASAROW, FIERRO, and DOES 1-10, Plaintiffs sustained damages as set forth at ¶ 85 above.

157. Defendants EVANS, LEYVA-CUTLER, ALPER, APPEL, DANIELS, HEMPHILL, VAN THILLO, TAMONDONG-BRADLEY, LEVENSON, COPLAN, and DOES 1-10 subjected Plaintiff FELARCA to their wrongful conduct and deprived them of rights described herein knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff FELARCA and others would be violated by their acts and/or omissions.

158. The conduct of Defendants EVANS, LEYVA-CUTLER, ALPER, APPEL, DANIELS, HEMPHILL, VAN THILLO, TAMONDONG-BRADLEY, LEVENSON, COPLAN, and DOES 1-10 entitles Plaintiff FELARCA to exemplary and punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law. Cal. Educ. Code 44114(c).

159. Each of the Defendants in this Count is liable for a civil penalty of $25,000. Cal. Civ. Code 52.1(a).

160. Plaintiff FELARCA is entitled to reasonable costs and attorneys' fees under Cal. Civ. Code 52.1(h), Cal. Code Civ. Proc. § 1021.5, and other applicable California codes and law.

**COUNT SIX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST DEFENDANTS EVANS, LEYVA-CUTLER, ALPER, APPEL,**
**DANIELS, HEMPHILL, SACKS, VAN THILLO, TAMONDONG-BRADLEY,**
**LEVENSON, PASAROW, FIERRO, and DOES 1-10**

161. Plaintiff FELARCA realleges each and every paragraph of this complaint as if fully set forth here.

162. The acts and/or omissions of Defendants EVANS, LEYVA-CUTLER, ALPER, APPEL, DANIELS, HEMPHILL, VAN THILLO, TAMONDONG-BRADLEY, LEVENSON, COPLAN, and DOES 1-10 as described above, including but not limited to (1) employing an attorney to interrogate middle school children without notifying or obtaining consent from their parents, (2) selecting children for interviews based on their race, perceived race, national origin, and/or perceived national origin, (3) interrogating minority and immigrant children about their political speech and activities inside and outside the classroom against racism and for immigrant rights, (4) traumatizing children who should feel safe and be able to trust school officials in their educational environment, (5) depriving Current ELD Students and Current ELD Parents of having a qualified teacher, traumatizing the children, disrupting the children's education, and knowing that this would cause anguish among these children and their parents that their actions and/or omissions might have caused this result, and/or (6) thinly-veiled threats against children on the basis of their perceived immigration status. These Defendants abused their positions of authority against children and against BUSD's most vulnerable children, parents, and guardians.

163. These acts and/or omissions were intended to (and/or were done with reckless disregard of the possibility that such action would) cause Plaintiffs emotional distress.

164. Plaintiffs suffered severe emotional distress, including, but not limited to, substantial and long-lasting suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, mortification, embarrassment, depression, and shame.

165. Defendants' conduct was a substantial factor in causing Plaintiffs severe emotional distress.

166. As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiffs sustained damages, and are entitled to relief as set forth at ¶ 85 above.

167. Plaintiffs are also entitled to reasonable costs and attorneys' fees under Cal. Code Civ. Proc. § 1021.5 and other applicable California codes and law.

## JURY DEMAND

168. Plaintiff hereby demands a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray:

1. That this matter be certified as a class action with the Classes defined as set forth above pursuant to Fed. R. Civ. P. 23, and that the Plaintiffs be appointed Class Representatives and their attorneys be appointed Class Counsel.

2. Compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable;

3. Punitive damages under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable;

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                    33

4.     All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Civil Code §§ 52.1; California California Code of Civil Procedure § 1021.5; and as otherwise may be allowed by California and/or federal law;

5.     Such other and further relief as supported by the evidence in this case and as this Court and/or the jury may deem appropriate.

By Plaintiff's Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND (UEAALDF)

BY:    /s/ Ronald Cruz
Ronald Cruz (State Bar No. 267038)
Shanta Driver (Michigan Bar No. P65007)*
1985 Linden Street
Oakland, California 94607
(510) 875-4463 (Ronald Cruz)
*Pro hac vice application pending

Dated: November 16, 2016

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES    34