Lorenzo E. Gasparetti (SBN 135976)
LGasparetti@ReedSmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

Mónica M. Ortiz (SBN 259282)
MOrtiz@ReedSmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendant Marleen Sacks

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUPE VARGAS, et al., | Case No. 3:16-cv-06634-WHO |
| Plaintiffs, | Honorable William H. Orrick III |
| vs. | **NOTICE OF MOTION AND MOTION OF DEFENDANT MARLEEN SACKS TO STRIKE CLAIMS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 (ANTI-SLAPP STATUTE); MEMORANDUM OF POINTS AND AUTHORITIES** |
| BERKELEY UNIFIED SCHOOL DISTRICT, et al., | |
| Defendants. | Date:      May 3, 2017<br>Time:      2:00 P.M.<br>Place:     Courtroom 2, 17th Floor<br>Compl.    Filed: Nov. 16, 2016 |
| | *[Filed concurrently with Request for Judicial Notice and [Proposed] Order]* |

1

2

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 3, 2017, at 2:00 P.M., or as soon thereafter as the matter may be heard, in Courtroom 2 of the Honorable William H. Orrick at the United States District Court for the Northern District of California, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Marleen Sacks ("Ms. Sacks") will, and hereby does, move the Court for an order striking the Complaint of Plaintiff Lupe Vargas, et al. pursuant to California Code of Civil Procedure Section 425.16, *i.e.*, California's anti-Strategic Lawsuit Against Public Participation ("SLAPP") statute. Specifically, Ms. Sacks moves to strike the following California claims from Plaintiffs' Complaint:

1.   Count I - Racial and National Origin Discrimination, Hostile Education Environment and Retaliation (Art. I, Sec. 31 of California Constitution)

2.   Count III - Violation of Freedom of Speech (Art. I, Sec. 2 of California Constitution)

3.   Count IV - Parents' and Guardians' Right to Participate in the Education of their Children (California Education Code § 51100)

4.   Count V - Violation of the Bane Act (Cal. Civ. Code § 52.1(b))

5.   Count VI - Intentional Infliction of Emotional Distress

This Motion is made on the grounds that Plaintiffs' claims against Ms. Sacks, a private attorney serving as outside counsel to Defendant Berkeley Unified School District ("BUSD"), arise from information gathering activities in connection with official proceedings regarding the professional misconduct of Yvette Felarca, a BUSD middle school teacher. As such, the alleged conduct of Ms. Sacks was "in furtherance of" constitutionally protected rights of petition or free speech in connection with an issue of public interest. Further, as Plaintiffs cannot establish a probability of prevailing on the merits of the aforementioned claims against Ms. Sacks, such claims should be stricken pursuant to Section 425.16.

1    In making this Motion, Ms. Sacks expressly reserves the right to file a separately noticed

2  motion seeking attorneys' fees and costs incurred in bringing this Motion pursuant to California

3  Code of Civil Procedure Section 425.16, subdivision (c).

4    This Motion is based on this Notice, the concurrently filed Memorandum of Points and

5  Authorities, Request for Judicial Notice and the exhibits attached thereto filed herewith, the

6  complete files and records in this action, and upon any such further evidence that may be presented

7  to the Court prior to or at the hearing on the Motion.

8

9    DATED:  March 21, 2017          Reed Smith LLP

10

11                                 By: /s/ Monica M. Ortiz
                                       Lorenzo E. Gasparetti
12                                     Mónica M. Ortiz
                                       Attorneys for Defendant Marleen Sacks

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

**TABLE OF CONTENTS**

2

Page

3   I.      INTRODUCTION .................................................................................... 1

4   II.     FACTUAL BACKGROUND ................................................................... 3

5   III.    LEGAL STANDARDS REGARDING ANTI-SLAPP MOTIONS ........... 6

6   IV.     PLAINTIFFS' CLAIMS AGAINST MS. SACKS CLEARLY ARISE OUT
7           OF PROTECTED ACTIVITY ................................................................. 8

8   V.      PLAINTIFFS CANNOT DEMONSTRATE A PROBABILITY OF
            PREVAILING ON THE MERITS OF ANY OF THEIR CALIFORNIA
9           CLAIMS AGAINST MS. SACKS .......................................................... 11

10          A.      There Is No Claim For Violation of California Constitutional Rights
                    Where Ms. Sacks Was Not Acting Under Color of State Law
11                  (COUNTS I and III) .................................................................... 11

12          B.      California's Litigation Privilege Bars Plaintiffs' State Law Claims
                    Against Ms. Sacks (COUNTS, I, III, IV, V and VI) ..................... 14
13
            C.      The Conduct At Issue Does Not Support A Claim For Violation Of
14                  Article I, Section 31 of the California Constitution – Equal
                    Protection (COUNT I) ................................................................. 15
15
            D.      The Conduct At Issue Does Not Support A Claim For Violation Of
16                  Article I, Section 2 of the California Constitution – Freedom of
                    Speech (COUNT III) ................................................................... 16
17
            E.      There Is No Private Right Of Action For An Alleged Violation Of
18                  California Education Code Section 51100 (COUNT IV) ............... 17
19
            F.      There Was No Violence Or Threat Of Violence To Support A Claim
20                  For Violation Of California Civil Code Section 52.1(b) – The Bane
                    Act (COUNT V) .......................................................................... 17
21
            G.      There Was No Extreme Or Outrageous Conduct Necessary To
22                  Support A Claim For Intentional Infliction Of Emotional Distress
                    (COUNT VI) ............................................................................... 19
23
            H.      The Parent Plaintiffs Have No Standing To Assert Derivative Claims
24                  (COUNTS I, III, IV, V and VI) ................................................... 20

25  VI.     CONCLUSION ...................................................................................... 22

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Acosta Orellana v. CropLife Int'l,*

5     711 F. Supp. 2d 81 (D.D.C. 2010) ......................................................................................... 13

6

*Allen v. Wright,*
      468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) ........................................................ 21

7

*T.A. ex rel. Amador v. McSwain Union Elementary Sch. Dist.,*

8     No. CV-F-08-1986 OWW/DLB, 2009 WL 1748793 (E.D. Cal. Jan. 18, 2009) ..................... 15

9

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
      526 U.S. 40, 119 S. Ct. 977 (1999) ........................................................................................ 11

10

11

*Austin B. v. Escondido Union Sch. Dist.,*
      149 Cal. App. 4th 860 (2007) ........................................................................................... 18, 21

12

*Beeman v. Anthem Prescription Mgmt., LLC,*

13     689 F.3d 1002 (9th Cir. 2012) ................................................................................................. 8

14

*Bellusa v. Board of Educ. of the Oakland Unified Sch. Dist.,*
      No. C-13-2930 JSC, 2013 WL 6443374 (N.D. Cal. Dec. 9, 2013) ........................................ 14

15

16

*Briggs v. Eden Council for Hope & Opportunity,*
      19 Cal. 4th 1106 (1999) ..................................................................................................... 8, 9

17

*BRV, Inc. v. Superior Court,*

18     143 Cal. App. 4th 742 (2006) ................................................................................................ 10

19

*Cabesuela v. Browning-Ferris Indust.,*
      68 Cal. App. 4th 101 (1998) .................................................................................................. 18

20

21

*Camfield v. Board of Trustees of Redondo Beach Unified Sch. Dist.,*
      No. 2:16-cv-02367, 2016 WL 7046594 (C.D. Cal. Dec. 2, 2016) .......................................... 17

22

*Cervantes v. Countrywide Home Loans, Inc.,*

23     656 F.3d 1034 (9th Cir. 2011) ............................................................................................... 20

24

*City of Cleburne v. Cleburne Living Ctr., Inc.,*
      473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) ...................................................... 15

25

26

*Clark v. Small,*
      No. 09-cv-1484, 2010 WL 935675 (Mar. 15, 2010) .............................................................. 16

27

*Cochran v. Cochran,*

28     65 Cal. App. 4th 488 (1998) .................................................................................................. 19

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Collins v. Womancare,*
    878 F.2d 1145 (9th Cir. 1989) ......................................................................................12

*Cotton v. Municipal Court,*
    59 Cal. App. 3d 601 (1976) ..........................................................................................11

*Damon v. Ocean Hills Journalism Club,*
    85 Cal. App. 4th 468 (2000) .........................................................................................10

*Davidson v. City of Westminster,*
    32 Cal. 3d 197 (1982) ...................................................................................................19

*Davis v. Folsom Cordova Unified School Dist.,*
    No. 215CV1714GEBKJNPS, 2015 WL 6821278 (E.D. Cal., Nov. 6, 2015)...............20, 21

*Doe By and Through Doe v. Petaluma City Sch. Dist.,*
    830 F. Supp. 1560 (N.D. Cal. 1993) .............................................................................18

*Emp'rs Ins. of Wausau v. Granite State Ins. Co.,*
    330 F.3d 1214 (9th Cir. 2003) ........................................................................................8

*Felarca v. Birgeneau,*
    Case No. Case No. 11-cv-05719-YGR (N.D. Cal. Nov. 29, 2011) ...............................6

*In re Fresh & Process Potatoes Antitrust Litig.,*
    834 F. Supp. 2d 1141 (D. Idaho 2011) .........................................................................13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)............................................20

*Gallanis-Politis v. Medina,*
    152 Cal. App. 4th 600 (2007) .......................................................................................14

*George v. Pacific-CSC Work Furlough,*
    91 F.3d 1227 (9th Cir. 1996) ........................................................................................12

*Gilbert v. Sykes,*
    147 Cal. App. 4th 13 (2007) ...........................................................................................7

*Gorenc v. Salt River Project Agr. Imp. & Power Dist.,*
    869 F.2d 503 (9th Cir. 1989) ........................................................................................12

*Graham-Sult v. Clainos,*
    756 F.3d 724 (9th Cir. 2014) ..........................................................................................7

*Grant v. WMC Mortg. Corp.,*
    No. Civ-2101117, 2010 WL 2509415 (E.D. Cal. June 7, 2010) ..................................19

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,*
    742 F.3d 414 (9th Cir. 2014) ..........................................................................................7

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

TABLE OF CONTENTS AND AUTHORITIES

*Guevara v. Seton Med. Ctr.*,
    642 Fed. App'x. 683 (9th Cir. 2016) ...............................................................11

*Han v. Samsung Telecomm. Am., LLC*,
    2013 WL 7158044 (C.D. Cal. Dec. 16, 2013) .................................................8

*Hansen v. Cal. Dep't of Corr. & Rehab.*,
    171 Cal. App. 4th 1537 (2008) .......................................................................9

*Harry A. v, Duncan*,
    351 F. Supp. 2d 1060 (D. Mont. 2005) .........................................................21

*Hecimovich v. Encinal Sch. Parent Teacher Org.*,
    203 Cal. App. 4th 450 (2012), *review denied* (Apr. 25, 2012) .................7, 10

*Heine v. Vilsack*,
    No. 1:12-cv-01992, 2014 WL 744619 (E.D. Cal. Dec. 31, 2014) ...............19

*Hill v. County of Sacramento*,
    No. 2:09-cv-01565, 2010 WL 4386664 (E.D. Cal. Oct. 28, 2010)...............15

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009) ................................................................................19

*Imageline, Inc. v. CafePress.com, Inc.*,
    2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) .................................................13

*Jacob B. v. County of Shasta*,
    40 Cal. 4th 948 (2007) ..................................................................................14

*Jones v. Beverly Hills Unified Sch. Dist.*,
    2010 WL 1222016 (C.D. Cal. Mar. 24, 2010) ...............................................21

*Jones v. Kmart Corp.*,
    17 Cal. 4th 329 (1998) ..................................................................................18

*Kajima Engineering & Const., Inc. v. City of Los Angeles*,
    95, Cal. App. 4th 921 (2002) ...........................................................................1

*Kashian v. Harriman*,
    98 Cal. App. 4th 892 (2002) .........................................................................14

*Katzberg v. Regents of Univ. of Cal.*,
    29 Cal. 4th 300 (2002) .............................................................................16, 17

*Katzenbach v. Grant*,
    No. 1:04-cv-6501, 2005 WL 1378976 (E.D. Cal. June 5, 2007)...................20

*Kreitenberg v. Los Alamitos Unified Sch. Dist.*,
    2012 WL 1374694 (Cal. Ct. App. Apr. 20, 2012) ........................................22

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Leventhal v. Vista Unified Sch. Dist.*
  973 F. Supp. 951 (S.D. Cal. 1997) ........................................................................................ 10

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014) ........................................................................................................ 21

*Los Angeles County Bar Ass'n v. Eu*,
  979 F.2d 697 (1992) ............................................................................................................ 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ................................................. 20

*Lynn v. Friedenthal*,
  2011 WL 6960823 (C.D. Cal. Dec. 2, 2011) ...................................................................... 12

*Mahaley v. Mapes*,
  2013 WL 1914237 (C.D. Cal. Apr. 16, 2013) (report and recommendation
  adopted, No. EDCV 12-01896-PSG OP, 2013 WL 1914231 (C.D. Cal. May 7,
  2013)) ........................................................................................................................... 11, 12

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013) ............................................................................................. 6, 7

*Maranatha Corrections, LLC v. Dep't of Corr. & Rehab.*,
  158 Cal. App. 4th 1075 (2008) ............................................................................................. 9

*Metabolife Int'l, Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ............................................................................................. 6, 8

*Morgan v. City of New York*,
  166 F. Supp. 2d 817 (S.D.N.Y. 2001) ................................................................................ 21

*Morrow v. Los Angeles Unified Sch. Dist.*,
  149 Cal. App. 4th 1424 (2007) ........................................................................................... 10

*Navellier v. Sletten*,
  29 Cal. 4th 82 (2002) ............................................................................................................ 6

*Nguyen-Lam v. Cao*,
  171 Cal. App. 4th 858 (2009) ............................................................................................... 1

*Oei v. N. Star Capital Acquisitions, LLC*,
  486 F. Supp. 2d 1089 (C.D. Cal. 2006) .............................................................................. 14

*Oleas v. Nationwide Mut. Ins. Co.*,
  135 Cal. App. 4th 1501 (2006) ............................................................................................. 8

*Perreault v. City of Westminister*,
  No. 12-cv-2767-CAS ANX, 2013 WL 864783 (C.D. Cal. Mar. 7, 2013) .......................... 18

*Personnel Adm'r of Mass. v. Feeney*,
  442 U.S. 256, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979)................................................15

*Price v. Hawaii*,
  939 F.2d 702 (9th Cir. 1991) ...............................................................................11, 12

*Price v. Stossel*,
  620 F.3d 992 (9th Cir. 2010) ..................................................................................7, 8

*Pro-Family Advocates v. Gomez*,
  46 Cal. App. 4th 1674 (1996) .....................................................................................15

*Riese v. County of Del Norte*,
  No. 12–cv–03723–WHO, 2013 WL 4732603 (N.D. Cal. Sept. 3, 2013)........................6

*Rodriguez v. Jurupa Unified Sch. Dist.*,
  No. E046162, 2010 WL 3135386 (Cal. Ct. of App., Aug. 10, 2010)..............................8

*Rosenthal v. Irell & Manella*,
  135 Cal. App. 3d 121 (1982) ......................................................................................14

*Rusheen v. Cohen*,
  37 Cal. 4th 1048 (2006) ............................................................................................14

*Salma v. Capon*,
  161 Cal. App. 4th 1275 (2008) ....................................................................................9

*Sanchez v. City of Santa Ana*,
  936 F.2d 1027 (9th Cir. 1991) ...................................................................................11

*Sandry v. First Franklin Fin. Corp.*,
  No. 1:10-CV-01923-OWW-SK, 2011 WL 202285 (E.D. Cal. Jan. 20, 2011) ...............13

*Shoyoye v. County of Los Angeles*,
  203 Cal. App. 4th 947 (2012) ....................................................................................18

*Simmons v. Sacramento County Superior Ct.*,
  318 F.3d 1156 (9th Cir. 2003) .............................................................................11, 12

*Steel v. City of San Diego*,
  726 F. Supp. 2d 1172 (S.D. Cal. 2010)........................................................................20

*Tanasecu v. State Bar of California*,
  2012 WL 1401294 (C.D. Cal. Mar. 26, 2012) .........................................................11, 12

*Tekle v. United States*,
  511 F.3d 839 (9th Cir. 2007) .....................................................................................19

*Thornbrough v. W. Placer Unified Sch. Dist.*,
  No. 2:09-cv-02613-GEB-GGH, 2010 WL 2179917 (E.D. Cal., May 27, 2010)........8, 9, 13

TABLE OF CONTENTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Venegas v. County of Los Angeles,*
    32 Cal. 4th 820 (2004) ...................................................................................17

*Vergos v. McNeal,*
    146 Cal. App. 4th 1387 (2007) .........................................................................9

*Vess et al., v. Ciba-Geigy Corp. et al.,*
    317 F.3d 1097 (9th Cir. 2003) ..........................................................................6

*Village of Arlington Heights v. Metro Hous. Dev. Corp.,*
    429 U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)....................................16

*W. Sugar Co-op. v. Archer-Daniels-Midland Co.,*
    No. 11-CV-3473 CBM MANX, 2011 WL 11741501 (C.D. Cal. Oct. 21, 2011).........................13

*Wallace v. McCubbin,*
    196 Cal. App. 4th 1169 (2011) .........................................................................7

*Yvette Felarca v. Berkeley Unified School District, et al.,*
    Case No. 3:16-cv-06184-RS (N.D. Cal. filed Oct. 26, 2016) ...........................6

**Statutes**

Cal. Civ. Code § 52.1 ...............................................................................................17

Cal. Civ. Proc. Code § 425.16(e) ...............................................................................8

Cal. Civ. Proc. Code § 425.16, subd. (a) ...................................................................6

Cal. Civ. Proc. Code § 425.16, subd. (b)(1)...............................................................6

Cal. Civ. Proc. Code § 425.16, subd. (b)(2)...............................................................8

Cal. Civ. Proc. Code § 425.16, subd. (e) ...............................................................7, 9

Cal. Civ. Proc. Code § 425.16, subd. (e)(4)..............................................................10

Cal. Educ. Code §§ 51100 ..................................................................................14, 17

Cal. Educ. Code §§ 51100 – 51133 ..........................................................................17

Cal. Educ. Code § 51101 ...........................................................................................17

**Other Authorities**

Rest. (Second) Torts § 46, cmt. (d)............................................................................19

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

"The purpose of [California Code of Civil Procedure] section 425.16 is to unmask SLAPP [Strategic Lawsuit Against Public Participation] actions "masquerad[ing] as ordinary lawsuits[.]'" *See Nguyen-Lam v. Cao,* 171 Cal. App. 4th 858, 871 (2009) citing *Kajima Engineering & Const., Inc. v. City of Los Angeles,* 95, Cal. App. 4th 921, 927 (2002).  That purpose could not find a more appropriate application than to this case.

Plaintiffs' so-called "civil rights" action is in reality a politically-motivated offshoot of official proceedings conducted by Defendant Berkeley Unified School District's ("BUSD") regarding the professional misconduct of one of its middle school teachers, Yvette Felarca ("Felarca").  Felarca is a long-time and prominent member of a militant political organization called By Any Means Necessary ("BAMN"), which advocates the denial – ***by any means necessary*** (thus, the eponymous name of the organization), including violence –  of constitutionally protected rights of petition and free speech to those who do not share their views.  Felarca's active participation in violent protests and demonstrations as well as interviews that she has granted to various news outlets have earned her and BAMN extensive local and national media coverage.  Not surprisingly, there also has been intense public scrutiny of her continuing employment as a teacher by BUSD – and for good reason.

Last year, following a complaint that Felarca was using her position and class time to espouse her political views, BUSD conducted an investigation regarding the matter.  Defendant Marleen Sacks ("Ms. Sacks"), a private attorney and outside counsel to BUSD, participated in the investigation.  As a result of this investigation, it was learned that not only was Felarca using class time to try to indoctrinate students in her political views, but that she was also recruiting and transporting students to off-campus political protests and demonstrations, exposing the students and their families as well as other BUSD employees to significant risk.  As this conduct violates BUSD policy, California Education Code directives ***and*** the Collective Bargaining Agreement ("CBA") that is in place with the teachers' union to which Felarca belongs, BUSD issued notices of unprofessional conduct and appropriate directives to Felarca.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Through what may be unwitting surrogates in this action, Felarca, BAMN and Plaintiffs'

2    counsel of record herein (who are closely affiliated with BAMN and currently represent Felarca in a

3    separate "civil rights" case against BUSD in federal court as well as other matters involving

4    Felarca's political activities) are now striking back and attempting to extend their mission to deny

5    the constitutional rights of neo-Nazi and fascist groups (as disturbing and despicable as their views

6    are to most others) to BUSD and its outside counsel, Ms. Sacks.  However, any legal effort that

7    targets "conduct in furtherance of the person's right of petition or free speech … in connection with

8    a public issue" is precisely what California's anti-SLAPP statute was designed to expose and defeat,

9    unless Plaintiffs can demonstrate a probability of prevailing on the merits of their claims.

10    Here, all of Plaintiffs' claims arise from the student interviews that were undertaken in

11    connection with official proceedings regarding Felarca's professional misconduct.  Information-

12    gathering activities such as this consistently have been held to constitute acts "in furtherance of"

13    constitutional rights of petition or free speech.  Further, there can be no doubt that Felarca's on- and

14    off-campus activities involving her students (and otherwise) are issues of public interest within the

15    meaning of the anti-SLAPP statute, as reflected by the intense public scrutiny and media coverage

16    those activities have garnered.

17    Because the alleged conduct underlying Plaintiffs' claims falls squarely within the scope of

18    the anti-SLAPP statute, Plaintiffs must establish a probability that they will prevail on the merits of

19    their claims against Ms. Sacks.  They cannot do so.  All of their California claims (the only ones

20    subject to this Motion) must necessarily fail because:

21    -    Ms. Sacks was not acting under color of state law (Counts I and III);

22    -    the subject interviews are protected by the litigation privilege (Counts I, III, IV, V and VI);

23    -    the subject interviews did not violate any constitutional equal protection rights (Count I);

24    -    the subject interviews did not violate any constitutional free speech rights (Count III);

25    -    there is no private of action for an alleged violation of California Education Code Section

26        51100 (Count IV);

27    -    the subject interviews did not involve violence or the threat of violence within the meaning

28        of the Bane Act (Count IV);

NOTICE OF MOTION AND MOTION OF DEFENDANT MARLEEN SACKS TO STRIKE CLAIMS PURSUANT
TO CALIFORNIA ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES

1      -    there was no extreme and outrageous conduct necessary to support a claim for intentional

2           infliction of emotional distress (Count VI); and

3      -    the parent-Plaintiffs have no standing to assert claims that are derivative to those of their

4           children (Counts I, III, IV, V and VI)

5      Accordingly, Ms. Sacks respectfully requests that all of Plaintiffs' California claims be

6 stricken in their entirety pursuant to Section 425.16.

7   **II.**    **FACTUAL BACKGROUND**

8      Felarca, a BUSD middle-school teacher, has a long history of professional misconduct and

9 disciplinary proceedings that is reflected in the record submitted in connection with a separate "civil

10 rights" lawsuit that she has brought against BUSD in federal court.[1]

11      Felarca is also a long-time and prominent member of a militant political organization called

12 BAMN, which advocates the denial by any means necessary – including by violence – of

13 constitutionally protected rights of petition and free speech to others who do not share their views.[2]

14 Felarca's active participation in violent protests and demonstrations has received extensive local and

15 national media coverage.[3]   She has also been interviewed several times by local and national news

16 outlets regarding these activities as well as her political views.[4]   Following one of Felarca's last

17 [1] *See* Request for Judicial Notice ("RJN"), **Exhibit 1**, Declaration of Evelyn Tamondong-Bradley,

18 filed by Defendant Berkeley Unified School District in support of Opposition to Motion for
Preliminary Injunction in *Yvette Felarca v. Berkeley Unified School District et al.*, Case No. 3:16-cv-

19 06184-RS (N.D. Cal. filed Oct. 26, 2016) (Doc. No 18), ¶¶ 4–8 ("Exh. 1"); *see also* **Exhibit 2** at pp.
3-8, Berkeleyside news, *Teacher asks for help after Fox backlash; court papers show contentious*

20 *history with BUSD*, Feb. 16, 2017, *available at* http://www.berkeleyside.com/2017/02/16/berkeley-
teacher-asks-help-fox-backlash-court-papers-show-contentious-history-busd/ ("Exh. 2").

21 [2] *See* RJN, **Exhibit 3**, The Sacramento Bee news coverage, *Activist Yvette Felarca says anti-fascist*

22 *rally at the Capitol will prevent more violence-VIDEO*, Jun. 26, 2016, available at
http://www.sacbee.com/news/local/crime/article86132312.html ("Exh. 3"); **Exhibit 4** at p. 6, The

23 Sacramento Bee, *At least 10 hurt at chaotic, bloody neo-Nazi rally at Capitol*, Jun. 26, 2016,
*available at* http://www.sacbee.com/news/local/crime/article86099332.html ("Exh. 4").

24 [3] *See* RJN, Exh. 4 at p. 6; **Exhibit 5** at pp. 2, 4, CNN News, *At least 10 injured -- some stabbed -- at*

25 *California rally, authorities say*, Jun. 27, 2016, *available at*
http://www.cnn.com/2016/06/26/us/brawl-at-california-rally/ ("Exh. 5").

26 [4] *See generally* RJN, **Exhibit 6** at pp. 1-3, ABC News 10 interview of Yvette Felarca, *Yvette Felarca*

27 *of BAMN on shutting down KKK/Nazi rally in Sacramento*, YOUTUBE.COM, NationalBAMN
Channel, Jun. 27, 2016, *available at* https://www.youtube.com/watch?v=V2dd1YoDULg ("Exh. 6");

28 **Exhibit 7** at pp. 1-2, KTVU interview of Yvette Felarca, *'No Regrets' Organizer calls for more*
*militant protests*, YOUTUBE.COM, KTVU Channel, Feb. 3, 2016, *available at*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   interviews on Fox News, which followed recent violent protests in Berkeley in which Felarca again

2   participated, a petition calling for Felarca to be fired from her teaching job had garnered more than

3   5,700 signatures.[5]

4          One particularly noteworthy incident that has received extensive media coverage occurred on

5   June 26, 2016, when Felarca and several non-permitted political organizations attempted to prevent a

6   permitted neo-Nazi rally at the California State Capitol in Sacramento.[6]  Felarca and the non-

7   permitted groups confronted the permitted groups, leading to violence, which resulted in numerous

8   reported injuries (including several stabbings) and thousands of dollars in property damage on

9   Capitol grounds.  Shouting "Nazi scum . . . Get the fuck off our streets!  Get the fuck off our streets,

10  you piece of shit", then punching a demonstrator in the gut, Felarca's role in instigating the incident

11  is revealed in footage taken at the scene and the subsequent interview she gave to the assembled

12  media.[7]  Notably, the California Highway Patrol recently announced that it has completed its

13  investigation into the incident and has forwarded a 2,000 page report to the Sacramento County

14  District Attorney's Office asking prosecutors to consider charging 106 individuals with 514

15  misdemeanors and 68 felonies.[8]

16  https://www.youtube.com/watch?v=YPrRLyFTzSU ("Exh. 7"); **Exhibit 8** Fox News still frame of
    news coverage, *Berkeley Protest Organizer Proud of Shutting Down 'Fascist' Milo*, Feb. 13, 2016,
17  *available at* http://insider.foxnews.com/2017/02/13/tucker-carlson-battles-protest-organizer-who-
    supports-berkeley-riots-violence ("Exh. 8"); **Exhibit 9** at pp. 2,6, and 8, Fox News interview of
18  Yvette Felarca, *Berkeley Protest Organizer Proud of Shutting Down 'Fascist' Milo*, Feb. 13, 2016,
    *available at* http://insider.foxnews.com/2017/02/13/tucker-carlson-battles-protest-organizer-who-
19  supports-berkeley-riots-violence ("Exh. 9").

20  [5]  *See* RJN, Exh. 2 at p. 3.

21  [6] *See* RJN, Exh. 4 at p. 1-6; Exh. 5 at pp. 1-2.

22  [7]  *See* RJN, Exh. 7; **Exhibit 10**, CBS SF Bay Area still frame of news coverage, *Berkeley Teacher
    On Video Punching Neo-Nazi Supporter At State Capitol Rally*, Jun. 29, 2016, *available at*
23  http://sanfrancisco.cbslocal.com/2016/06/29/berkeley-teacher-on-video-punching-neo-nazi-
    supporter-at-state-capitol-rally/ ("Exh.10"); **Exhibit 11** at pp. 1-2, Video footage, *Antifa Yvette
24  Felarca Assaulting Protestor*, YOUTUBE.COM, Thought Crimes Youtube Channel, Jun 28, 2016,
    *available at* https://www.youtube.com/watch?v=uuWoQfZgW7M. ("Exh. 11"); **Exhibit 12**, CBS SF
25  Bay Area still frames of news coverage, *Berkeley Teacher On Video Punching Neo-Nazi Supporter
    At State Capitol Rally*, CBS SF Bay Area, Jun. 29, 2016, *available at*
26  http://sanfrancisco.cbslocal.com/2016/06/29/berkeley-teacher-on-video-punching-neo-nazi-
    supporter-at-state-capitol-rally/ ("Exh. 12").

27

28  [8] *See* RJN, **Exhibit 13**, California Highway Patrol Press Release, *CHP Completes Investigation Into
    2016 Capitol Incident, March 8, 2017, available at*

NOTICE OF MOTION AND MOTION OF DEFENDANT MARLEEN SACKS TO STRIKE CLAIMS PURSUANT
TO CALIFORNIA ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES

1   After the aforementioned incident, BUSD received anonymous threats to Felarca and her

2   students requiring BUSD to have additional security at the school.[9]  BUSD also received a complaint

3   from a former parent that Felarca was using her position and class time to proselytize and attempt to

4   indoctrinate students with her political views.[10]  Upon subsequent investigation, it was discovered

5   that Felarca was recruiting students and transporting them to off-campus political protests and

6   demonstrations, exposing students (most of them in her English Language Development ("ELD")

7   class) and their families (of various national origins) as well as other BUSD employees to significant

8   risk.[11]  As this conduct violates BUSD policy, the CBA *and* California Education Code directives,

9   BUSD issued a notice of unprofessional conduct and appropriate directives to Felarca on November

10  1, 2016.[12]  On November 16, 2016, Plaintiffs filed the present action.  Plaintiffs' counsel in this case

11  are closely affiliated with BAMN.[13]  They are also currently representing Felarca in her separate

12

13

14

---

15  https://www.chp.ca.gov/PressReleases/Pages/CHP-Completes-Investigation-into-2016-Capitol-
Incident.aspx ("Exh. 13"); **Exhibit 14** at pp. 1-2, Los Angeles Times, *CHP seeks charges against*

16  *106 people in state Capitol clash between neo-Nazis and protesters*, Mar. 8, 2017, *available at*
http://www.latimes.com/local/lanow/la-me-ln-neo-nazi-charges-chp-20170308-story.html ("Exh.

17  14").

18  [9] *See* RJN, Exh. 1 at ¶ 8 and accompanying Exh. H attached thereto, Nov. 1, 2016 Notice of
Unprofessional Conduct, ¶ 41; Exh. 2 at p. 9; **Exhibit 15**, CBS SF Bay Area, *Berkeley Teacher On*

19  *Video Punching Neo-Nazi Supporter At State Capitol Rally*, Jun. 29, 2016, *available at*
http://sanfrancisco.cbslocal.com/2016/06/29/berkeley-teacher-on-video-punching-neo-nazi-

20  supporter-at-state-capitol-rally/. ("Exh. 15").

21  [10] *See* RJN, Exh. 1 at ¶ 8 and accompanying Exh. H attached thereto, Nov. 1, 2016 Notice of
Unprofessional Conduct ("11/1/2016 NUC") at ¶ 4, 15.

22

23  [11] *See* RJN, Exh. 1 at ¶ 8 and 11/1/2016 NUC at ¶¶ 28-38.

24  [12] *See* RJN, Exh. 1 at ¶ 8 and 11/1/2016 NUC.

25  [13] *See* RJN, **Exhibit 16** at pp. 2,4, ("Exh. 16") News Press conference coverage of Yvette Felarca and
Shanta Driver, *Press Conference to Defend Yvette Felarca from Berkeley School District Witchhunt*,
YOUTUBE.COM, nationalBAMN Youtube Channel, Sept. 28, 2016, *available at*

26  https://www.youtube.com/watch?v=mHhVxvNt3vY; **Exhibit 17**, at p. 1, Thom Hartmann Program,
Interview of BAMN member & organizer Ronald Cruz, *Violence at Occupy*, Thom Hartmann

27  Program Youtube Channel, Nov. 14, 2011, *available at*
https://www.youtube.com/watch?v=R0fRWSqxFnU ("Exh. 17").

28

NOTICE OF MOTION AND MOTION OF DEFENDANT MARLEEN SACKS TO STRIKE CLAIMS PURSUANT
TO CALIFORNIA ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   "civil rights" case against BUSD as well as a "police brutality" case against the University of

2   California, both in federal court.[14]

3        Ms. Sacks is a private attorney and outside counsel to BUSD.  She is neither an employee nor

4   agent of BUSD.[15]  Ms. Sacks participated in BUSD's aforementioned investigation of Felarca, but

5   she interviewed only one ("J.B.") of the four named student-Plaintiffs in this case.  (Compl., ¶ 46).

6   **III.   LEGAL STANDARDS REGARDING ANTI-SLAPP MOTIONS**

7        California Code of Civil Procedure Section 425.16 "was enacted to allow early dismissal of

8   meritless first amendment cases aimed at chilling expression through costly, time-consuming

9   litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).  These lawsuits are

10   also known as "Strategic Lawsuits Against Public Participation," or "SLAPPs."  *Makaeff v. Trump*

11   *Univ., LLC,* 715 F.3d 254, 261 (9th Cir. 2013).

12        The anti-SLAPP statute's application is broad:  "A cause of action against a person arising

13   from any act of that person in furtherance of the person's right of petition or free speech under the

14   United States Constitution or the California Constitution in connection with a public issue shall be

15   subject to a special motion to strike, unless the court determines that the plaintiff has established that

16   there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16,

17   subd.(a) & (b)(1).  While the anti-SLAPP statute cannot be used to strike federal causes of action in

18   federal court, a federal court may properly entertain an anti-SLAPP special motion to strike in

19   connection with California constitutional, statutory and common law claims.  *Riese v. County of Del*

20   *Norte*, No. 12–cv–03723–WHO, 2013 WL 4732603, at *3 (N.D. Cal. Sept. 3, 2013); *Vess et al., v.*

21   *Ciba-Geigy Corp. et al.,* 317 F.3d 1097, 1109 (9th Cir. 2003).

22        In ruling on an anti-SLAPP motion, a court must engage in a two-step process.  *Navellier v.*

23   *Sletten*, 29 Cal. 4th 82, 88 (2002).  First, "the court decides whether the defendant has made a

24   threshold showing that the challenged cause of action is one arising from protected activity, that is,

25   

[14]   *See Felarca v. Berkeley Unified Sch. Dist.*, Case No. 3:16-cv-06184-RS (N.D. Cal. Oct. 26,

26   2016); *Felarca v. Birgeneau*, Case No. Case No. 11-cv-05719-YGR (N.D. Cal. Nov. 29, 2011).

27   [15] *See* RJN, **Exhibit 18**, State Bar of California, Profile of Marleen Lee Sacks, State Bar No. 161388,
last visited Mar. 21, 2017, *available at* http://members.calbar.ca.gov/fal/Member/Detail/161388

28   ("Exh. 18").

1   by demonstrating that the facts underlying the plaintiff's complaint fits one of the categories spelled

2   out in Section 425.16, subdivision (e)". *Hecimovich v. Encinal Sch. Parent Teacher Org.,* 203 Cal.

3   App. 4th 450, 465 (2012), *review denied* (Apr. 25, 2012).  Here, the relevant categories are the

4   following:

> (1)    any written or oral statement or writing made before a legislative,
> executive, or judicial proceeding, or any other official proceeding
> authorized by law,
>
> (2)    any written or oral statement or writing made in connection with
> an . . . official proceeding authorized by law.
>
> […]
>
> (4)    any … conduct [by the defendants] in furtherance of the exercise
> of the constitutional right … of free speech in connection with … an issue
> of public interest.

13   Cal. Civ. Proc. Code § 425.16, subd. (e).

14       In evaluating whether an act falls within one or more of the aforementioned categories of

15   protected activity under Section 425.16(e), the court looks to "what activities form the basis for each

16   of Plaintiffs' causes of action," then "ask[s] whether those activities are 'protected.'" *Graham-Sult

17   v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014) (citing *Wallace v. McCubbin*, 196 Cal. App. 4th 1169

18   (2011)).  "An act is in furtherance of the right of free speech if the act helps to advance that right or

19   assists in the exercise of that right.  *Greater Los Angeles Agency on Deafness, Inc. v. Cable News

20   Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014).

21       Once the defendant has made a prima facie showing as to the first prong, the second step of

22   the anti-SLAPP analysis shifts the burden to the plaintiff to demonstrate a probability of prevailing

23   on a the challenged claims.  *Makaeff,* 715 F.3d at 261.  "For a plaintiff to establish a probability of

24   prevailing on a claim, he must satisfy a standard comparable to that used on a motion for judgment

25   as a matter of law." *Price v. Stossel,* 620 F.3d 992, 1000 (9th Cir. 2010).  Plaintiff's showing must

26   be made through competent and admissible evidence.  "Thus, declarations that lack foundation or

27   personal knowledge, or are argumentative, speculative, impermissible opinion, hearsay, or

28   conclusory are to be disregarded." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 26 (2007) (citations

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF MOTION AND MOTION OF DEFENDANT MARLEEN SACKS TO STRIKE CLAIMS PURSUANT
TO CALIFORNIA ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   omitted); *see also* Section 425.16, subd. (b)(2) ("In making its determination, the court shall consider

2   the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or

3   defense is based."). This standard requires that a claim be dismissed if the plaintiff presents an

4   insufficient legal basis, or if no reasonable jury would find in its favor. *Metabolife Int'l,* 264 F.3d at

5   840; *see also Price,* 620 F.3d at 1000.

6   **IV.   PLAINTIFFS' CLAIMS AGAINST MS. SACKS CLEARLY ARISE OUT OF
        PROTECTED ACTIVITY**

7       In the first and second categories of protected activity set forth at Section 425.16(e)(1) and

8   (2), "the statute requires simply *any* writing or statement made in, or in connection with an issue

9   under consideration or review by, the specified proceeding or body . . . . Under the plain terms of the

10  statute it is the context or setting itself that make the issue a public issue: all that matters is that the

11  First Amendment activity take place in an official proceeding or be made in connection with an issue

12  being reviewed by an official proceeding." *Briggs v. Eden Council for Hope & Opportunity,* 19 Cal.

13  4th 1106, 1116, 1118 (1999) (emphasis in original). "Official proceeding", in turn, means a

14  governmental forum, regardless of the label. *Oleas v. Nationwide Mut. Ins. Co.,* 135 Cal. App. 4th

15  1501, 1507 (2006); see *also Rodriguez v. Jurupa Unified Sch. Dist.,* No. E046162, 2010 WL

16  3135386 (Cal. Ct. of App., Aug. 10, 2010) (involving school district investigation and board

17  meetings) (unpublished decision); *Thornbrough v. W. Placer Unified Sch. Dist.,* No. 2:09-cv-02613-

18  GEB-GGH, 2010 WL 2179917 (E.D. Cal., May 27, 2010) (involving school district administrative

19  proceedings).[16]

20      Any such writing or statement made **before** an official proceeding (Section 425.16(e)(1)) is

21  deemed to be an exercise of defendant's right of free speech and petition, i.e., "an act in furtherance

22  of a person's right of petition and speech under the United States or California Constitution." Cal.

23  Civ. Proc. Code Sec. 425.16(e). Further, the party filing an anti-SLAPP motion is not required to

---

25  [16] *Beeman v. Anthem Prescription Mgmt., LLC,* 689 F.3d 1002, 1008 n.2 (9th Cir. 2012) ( "Although
    they are not precedent under California Rule of Court 977(a), we may nonetheless rely on the

26  unpublished opinions ... [that] 'lend support' to the contention [at issue under California law].")
    (citing *Emp'rs Ins. of Wausau v. Granite State Ins. Co.,* 330 F.3d 1214, 1220 n.8 (9th Cir. 2003));

27  *Han v. Samsung Telecomm Am., LLC,* 2013 WL 7158044 at *7 n.10 (C.D. Cal. Dec. 16, 2013)
    ("Federal courts may rely on unpublished state court opinions to 'lend support' to contentions

28  regarding California law) (citation omitted).

1   demonstrate that its protected writings or statements were made on its own behalf.  Thus, attorneys

2   (like Ms. Sacks) representing clients in connection with official proceedings may also invoke the

3   anti-SLAPP statute.  *Thornbrough,* 2010 WL 2179917 at *11 (also involving private attorney

4   serving as outside counsel to school district).

5          The same protection for writings and statements made before an official proceeding extends

6   to writings and statements ***outside*** such proceedings (Section 425.16(e)(2)) if sufficiently related to

7   matters under consideration by the official body.  *Maranatha Corrections, LLC v. Dep't of Corr. &*

8   *Rehab.,* 158 Cal. App. 4th 1075, 1085 (2008).  As long as the writings and statements are made "in

9   connection with an issue under consideration" by a government body, they are protected.  *Vergos v.*

10  *McNeal,* 146 Cal. App. 4th 1387, 1395 (2007).  This includes writings and statements "preparatory

11  to or in anticipation of the bringing of an official proceeding."  *Hansen v. Cal. Dep't of Corr. &*

12  *Rehab.,* 171 Cal. App. 4th 1537, 1544 (2008); see *also Thornbrough,* 2010 WL 2179917, at *13;

13  *Rodriquez,* 2010 WL 3135386, at *8 (unpublished decision); *Salma  v. Capon,* 161 Cal. App. 4th

14  1275, 1286 (2008).  Although Section 425.16(e)(2) does not expressly require that the writings and

15  statements involve the exercise of a constitutional right, the presentation of such writings and

16  statements to a public body necessarily implicates the right of free speech.  Cal. Civ. Proc. Code

17  § 425.16, subd. (e).

18         Here, the basic thrust of Plaintiffs' causes of action is that student interviews undertaken in

19  connection with BUSD's investigation of Felarca's professional misconduct violated various

20  constitutional rights of the students and gave rise to other statutory and common law claims.  There

21  is no question, however, that this was information-gathering activity – some of it allegedly

22  undertaken by Ms. Sacks, a private attorney serving as outside counsel to BUSD – in connection

23  with official proceedings being conducted by BUSD.[17]  As such, Plaintiffs' claims are easily

24  encompassed within the first two categories of protected activity under Section 425.16(e).  *Briggs,*

25  19 Cal. 4th at 1116.

26

27  ───────────────

28  [17] *See* RJN, Exh. 18.

NOTICE OF MOTION AND MOTION OF DEFENDANT MARLEEN SACKS TO STRIKE CLAIMS PURSUANT
TO CALIFORNIA ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    At a minimum, the subject student interviews clearly fall within the fourth category of

2  protected speech or action, i.e., "any other conduct in furtherance of the exercise of the constitutional

3  right of petition or the constitutional right of free speech in connection with a public issue or an issue

4  of public interest."  Cal. Civ. Proc. Code § 425.16, subd. (e)(4). No nexus is required between the

5  conduct and any issue under consideration by a public body, although there certainly is here.

6  "Public interest" within the meaning of the anti-SLAPP statute, in turn, includes "not only

7  governmental matters, but also private conduct that impacts a broad segment of society and/or that

8  affects a community in a manner similar to that of a government entity."  *Damon v. Ocean Hills*

9  *Journalism Club,* 85 Cal. App. 4th 468, 479 (2000); *see also Hecimovich,* 203 Cal. App. 4th at 467

10  (action by dismissed volunteer coach of youth sports team against parent-teacher organization was

11  within statute, because safety of children in sports was issue of public interest);  *Morrow v. Los*

12  *Angeles Unified Sch. Dist.,* 149 Cal. App. 4th 1424 (2007) (action by dismissed principal against

13  school district was within statute, as incidents of student violence on campus were of public

14  interest).

15    Here, there is abundant evidence submitted in connection with this motion demonstrating the

16  intense public interest not only in Felarca's political activities, but more specifically, how those

17  political activities have been directed toward and impacted the safety of BUSD students, their

18  families and other BUSD employees.[18]  Indeed, Felarca, BAMN and Plaintiffs' counsel in this case

19  have themselves stoked that public interest by readily making themselves available to both the local

20  and national media.[19]  Accordingly, there is no basis for Plaintiffs to argue that the student

21  interviews that are at the heart of Plaintiffs' claims against Ms. Sacks (and BUSD) did not involve

22  issues that were undeniably of public interest.  *See, e.g., BRV, Inc. v. Superior Court,* 143 Cal. App.

23  4th 742, 757 (2006) ("Without doubt, the public has a significant interest in the professional

24  competence and conduct of a school district superintendent and high school principal."); *Leventhal*

25  *v. Vista Unified Sch. Dist.* 973 F. Supp. 951, 958 (S.D. Cal. 1997) ("Debate over public issues,

---

26

27  [18] *See generally* RJN, Exhs. 1-17.

28  [19] *See* RJN, Exhs. 7-9, 16 and 17.

1   including the qualifications and performance of public officials (such as a school superintendent),

2   lies at the heart of the First Amendment.").

3   **V.    PLAINTIFFS CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON
       THE MERITS OF ANY OF THEIR CALIFORNIA CLAIMS AGAINST MS. SACKS**

4       **A.    There Is No Claim For Violation of California Constitutional Rights Where Ms.
           Sacks Was Not Acting Under Color of State Law (COUNTS I and III)**

5

6           To state a claim for violation of constitutional rights, a plaintiff must establish that the

7   defendant (1) was acting under color of state law and (2) deprived him of a right, privilege, or

8   immunity secured by the U.S. or California Constitutions.  *American Mfrs. Mut. Ins. Co. v. Sullivan*,

9   526 U.S. 40, 49-50, 119 S. Ct. 977 (1999); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1038 (9th

10  Cir. 1991); *Guevara v. Seton Med. Ctr.,* 642 Fed. App'x. 683, 687 (9th Cir. 2016) (application to

11  Art. I, Sec. 2 of California Constitution – Free Speech); *Cotton v. Municipal Court,* 59 Cal. App. 3d

12  601, 605 (1976) (application to Art. I, Sec. 31 of California Constitution – Equal Protection).  As the

13  Supreme Court in *American Manufacturers Mutual* explained, the "under-color-of-state-law"

14  element excludes from its reach "merely private conduct." 526 U.S. at 50 (citations omitted); *see*

15  *also Price v. Hawaii*, 939 F.2d 702, 707-708 (9th Cir. 1991) ("private parties are not generally acting

16  under color of state law.").

17          A plaintiff claiming a violation of any constitutional rights must establish "*both* an alleged

18  constitutional deprivation 'caused by the exercise of some right or privilege created by the State or

19  by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that

20  'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'"

21  *American Mfrs Mut. Ins. Co.*, 526 U.S. at 50 (emphasis in original) (citations omitted).  The Court

22  further explained that "[a]ction taken by private entities with the mere approval or acquiescence of

23  the State is not state action." *Id.* at 52. Significantly, a lawyer in private practice is generally not

24  deemed to be acting under color of state law.  *See e.g., Simmons v. Sacramento County Superior Ct.*,

25  318 F.3d 1156, 1161 (9th Cir. 2003); *Mahaley v. Mapes*, 2013 WL 1914237, at *5 (C.D. Cal. Apr.

26  16, 2013) (report and recommendation adopted, No. EDCV 12-01896-PSG OP, 2013 WL 1914231

27  (C.D. Cal. May 7, 2013)); *Tanasecu v. State Bar of California*, 2012 WL 1401294, at *16 (C.D. Cal.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Mar. 26, 2012); *Lynn v. Friedenthal*, 2011 WL 6960823, at *11 (C.D. Cal. Dec. 2, 2011).

2          The Supreme Court has articulated four tests for determining whether the actions of a private

3    lawyer or other private actor constitute state action: (1) the public function test, (2) the joint action

4    test, (3) the state compulsion test, and (4) the governmental nexus test.  *See, e.g., George v. Pacific-*

5    *CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996); *Tanasecu*, 2012 WL 1401294, at *16.  The

6    actions of a private actor are under color of state law only when one of these tests is met.  *Id.*

7          The public function test applies when a private actor performs a function that is "traditionally

8    exclusively reserved to the State" such that the private actor "become[s] the government."  *George*,

9    91 F.3d at 1230 (citing *Gorenc v. Salt River Project Agr. Imp. & Power Dist.,* 869 F.2d 503, 508

10    (9th Cir. 1989)).  The joint action test requires "a substantial degree of cooperative action [and

11    c]onclusory allegations are insufficient to establish that a private individual was conspiring or acting

12    jointly with a state actor."  *Mahaley*, 2013 WL 1914237 at *5 (citing *Collins v. Womancare,* 878

13    F.2d 1145, 1154 (9th Cir. 1989)).  The state compulsion test applies when "State law or custom

14    requires [a private actor to take] a certain course of action."  *George*, 91 F.3d at 1232 (citing *Gorenc*,

15    869 F.2d at 508).  Finally, the governmental nexus test requires "a sufficiently close nexus between

16    the State and the challenged action of the [private actor] so the action of the latter may be fairly

17    treated as that of the state itself."  *Gorenc*, 869 F.2d at 506.

18          Ms. Sacks is a private lawyer.[20]  As a private attorney serving as BUSD's outside counsel,

19    there is no basis to conclude that Ms. Sacks was acting under color of state law when she

20    participated in the investigation of Felarca's professional misconduct.  *See, e.g., Simmons*, 318 F.3d

21    at 1161.  The Complaint itself is entirely devoid of any factual allegation that would establish that

22    Ms. Sacks acted under color of state law.  Indeed, the Plaintiffs make only the conclusory allegation

23    that "each Defendant acted under color of the laws . . . of the State of California" (Compl. at ¶ 36)

24    and that "Defendants' actions and omissions were done under color of law" (Compl. at ¶ 81),[21] but

25    there are no ***factual*** allegations whatsoever relating to Ms. Sacks that would show that she was

26    _____

27    [20] *See* RJN, Exh. 18.
     [21] The plaintiff must plead facts to establish that the defendant acted under color of state law – mere

28    conclusions will not suffice.  *Price*, 939 F.2d at 708 ("a defendant is entitled to more than the bald
     legal conclusion that there was action under color of state law.")

1   acting under color of state law.  Moreover, nowhere in the Complaint do the Plaintiffs even attempt

2   to establish that any one of the four tests recognized by the Supreme Court applies.  Mere conclusory

3   allegations are insufficient to establish that a private lawyer acted under color of state law.  *See*

4   *Thornbrough*, 2010 WL 2179917, *7 (holding that plaintiff's conclusory allegations that school

5   district's attorney was "conspiring" with state officers were insufficient).

6          Likewise, while the Plaintiffs make the unsupported claim that Ms. Sacks is an "agent for

7   BUSD," (Compl. at ¶ 27), they fail entirely to make any factual assertions to support such

8   conclusion.  "To sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating

9   the principal's control over its agent." *Imageline, Inc. v. CafePress.com, Inc.*, 2011 WL 1322525, at

10  *4 (C.D. Cal. Apr. 6, 2011).  Conclusory allegations of an agency relationship are not sufficient to

11  survive a motion to dismiss under Rule 12(b)(6).  *See, e.g., W. Sugar Co-op. v. Archer-Daniels-*

12  *Midland Co.*, No. 11-CV-3473 CBM MANX, 2011 WL 11741501, at *7 (C.D. Cal. Oct. 21, 2011)

13  (holding that plaintiff's conclusory allegations of an agency relationship were insufficient to survive

14  a motion to dismiss because they did not establish the authority to control that is required to show an

15  agency relationship); *Sandry v. First Franklin Fin. Corp.,* No. 1:10-CV-01923-OWW-SK, 2011 WL

16  202285, at *3 (E.D. Cal. Jan. 20, 2011) (holding plaintiff's conclusory allegations failed to

17  sufficiently plead actual or ostensible agency).[22]  Because Plaintiffs have not alleged any ***facts*** in

18  support of their conclusory allegation that Ms. Sacks acted as BUSD's agent, the purported agency

19  relationship does not and cannot satisfy the "under-color-of-state-law" requirement.

20         As Ms. Sacks was engaged in protected activity on behalf of BUSD, the burden on this anti-

21  SLAPP motion shifts to Plaintiffs to demonstrate that they can prevail on the merits of their claims

22  against Ms. Sacks.  Here, Plaintiffs have not even shown that they can adequately plead their claims

23  for violation of California constitutional rights under Counts I (Art. I, Sec. 31, California

24  Constitution – Equal Protection) and III (Art. I, Sec. 2, California Constitution – Free Speech)

25

26  [22]    *See also In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1168 (D. Idaho 2011) (holding that plaintiffs' agency allegations were far too conclusory to infer that a third party was acting as defendant' agent); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 112 (D.D.C. 2010) (holding that allegations of purported control, e.g. that the purported agent was "under the complete control of" the principal, were completely conclusory and lacking necessary factual support to survive dismissal under FRCP Rule 12(b)(6)).

NOTICE OF MOTION AND MOTION OF DEFENDANT MARLEEN SACKS TO STRIKE CLAIMS PURSUANT
TO CALIFORNIA ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   against Ms. Sacks, much less meet their burden of showing that they can actually prevail on them.

2   **B.    California's Litigation Privilege Bars Plaintiffs' State Law Claims Against Ms. Sacks (COUNTS, I, III, IV, V and VI)**

3

4   California's "litigation privilege", which is codified at California Code of Civil Procedure

5   Section 47(b), applies to all of Plaintiffs' state law claims.  *Bellusa v. Board of Educ. of the Oakland*

6   *Unified Sch. Dist.*, No. C-13-2930 JSC, 2013 WL 6443374, at *9 (N.D. Cal. Dec. 9, 2013) (privilege

7   applied to Bane Act claim); *Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121, 125 (1982)

8   (privilege applied to intentional infliction of emotional distress claim); *Jacob B. v. County of Shasta*,

9   40 Cal. 4th 948, 952 (2007) (privilege applied to California constitutional and statutory claims); *Oei*

10  *v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1099 (C.D. Cal. 2006) (same).

11       The litigation privilege applies to the communicative acts of attorneys and is absolute,

12  whether the communication was made with malice or the intent to harm.  *See Rusheen v. Cohen,* 37

13  Cal. 4th 1048, 1052 (2006); *Kashian v. Harriman,* 98 Cal. App. 4th 892, 913 (2002).  Further, "the

14  litigation privilege is not limited to the courtroom, but encompasses actions by administrative bodies

15  and quasi-judicial proceedings. The privilege extends beyond mere statements made in proceedings,

16  and includes statements made to initiate official action."  *Kashian,* 98 Cal. App. 4th at 913.  "Any

17  doubt about whether the privilege applies is resolved in favor of applying it."  *Id.*

18       Here, there is no room for Plaintiffs' to argue that the student interviews at issue are not

19  subject to the litigation privilege.  In conducting any student interviews, Ms. Sacks' was doing so as

20  a private attorney and BUSD's outside counsel in connection with its investigation of Felarca's

21  professional misconduct and official proceedings relating thereto.  *See Gallanis-Politis v. Medina*,

22  152 Cal. App. 4th 600, 616 (2007) (investigation and report generated by counsel were

23  quintessential communicative acts subject to the privilege).  Accordingly, Plaintiffs' state law claims

24  under Count I (Art. I Sec. 31, California Constitution), Count III (Art. I , Sec. 2, California

25  Constitution), Count IV (California Education Code § 51100), Count V (Bane Act) and Count VI

26  (intentional infliction of emotional distress) should all be stricken.

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**C.    The Conduct At Issue Does Not Support A Claim For Violation Of Article I, Section 31 of the California Constitution – Equal Protection (COUNT I)**

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, 'which is essentially a direction that all persons similarly situated should be treated alike.'" *City of Cleburne v. Cleburne Living Ctr., In*c. 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).  "California's 'constitutional guarantee of equal protection is substantially similar to that contained in the United States Constitution.  Federal and state analysis of equal protection claims is substantially the same.'" *See Hill v. County of Sacramento,* No. 2:09-cv-01565, 2010 WL 4386664, at *6 (E.D. Cal. Oct. 28, 2010) (quoting *Pro-Family Advocates v. Gomez,* 46 Cal. App. 4th 1674, 1685 n.13 (1996);  *see also Los Angeles County Bar Ass'n,* 979 F.2d 697, 705 n.4 (1992).

To state a claim for a violation of constitutional equal protection rights, a plaintiff "must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *T.A. ex rel. Amador v. McSwain Union Elementary Sch. Dist*., No. CV-F-08-1986 OWW/DLB, 2009 WL 1748793, at *8 (E.D. Cal. Jan. 18, 2009).   A plaintiff may satisfy this showing by alleging four separate elements: (1) that the defendants treated plaintiff differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) the defendants acted with discriminatory intent in applying this classification; and (4) plaintiff suffered injury as a result of the discriminatory classification.  *Id.* "'[D]iscriminatory purpose' implies more than intent as volition or intent as awareness of consequences; it implies that the decision maker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 258, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979).

Plaintiffs plead in a conclusory manner that "Defendants selected the student Plaintiffs for interrogation because of their race, perceived race, national origin, and/or perceived national origin", the interviews were in retaliation for Felarca's "anti-racist protests during off-duty hours" and "they conveyed a message of racist hostility, fostering a racially hostile environment within BUSD denying student Plaintiffs equal access to education based on their race and national origin."

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  (Compl., ¶¶ 102, 104).  These allegations are insufficient to attribute any wrongdoing to Ms. Sacks,

2  a private attorney and altogether fail to show disparate treatment, discriminatory intent or an injury

3  as required to substantiate a violation of equal protection rights.

4  Even where some facts are alleged, as is the case with student-Plaintiffs Vargas and X.M.

5  (who have not otherwise made any allegations specific to Ms. Sacks), they are conclusory and lack

6  any substance relevant to a civil rights violation. (Compl., ¶ 106); *see Clark v. Small*, No. 09-cv-

7  1484, 2010 WL 935675 at *4 (Mar. 15, 2010) ("conclusory allegations of discrimination are

8  insufficient to withstand a motion to dismiss, unless they are supported by facts that may prove

9  invidious discriminatory intent or purpose.") (citing *Village of Arlington Heights v. Metro Hous.*

10  *Dev. Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)).

11  Further, it should be noted that Plaintiffs' only seek damages pursuant to their claim for

12  violation of equal protection rights under the California Constitution.  (Compl., ¶¶ 84 and 111,

13  prayer for relief).  However, they have failed to demonstrate that there is any private right of action

14  for damages under the California Constitution in this case.  *See Katzberg v. Regents of Univ. of Cal.*,

15  29 Cal. 4th 300, 324-329 (2002) (requiring consideration of the following factors: (1) the adequacy

16  of existing remedies; (2) the extent to which a constitutional tort action would change established

17  tort law; (3) the nature of the provision and the significance of the purpose that it seeks to effectuate;

18  and (4) whether the creation of a damages action might produce adverse policy consequences or

19  practical problems of proof).

20  Again, Plaintiffs have failed to show that they can plead a valid claim for violation of equal

21  protection rights under Count I (Art. I, Sec. 31 of the California Constitution), much less that they

22  can prevail on it.

23  **D.     The Conduct At Issue Does Not Support A Claim For Violation Of Article I,**
24  **Section 2 of the California Constitution – Freedom of Speech (COUNT III)**

25  Like their equal protection claim, Plaintiffs' claim for violation of their free speech rights

26  under the California Constitution consists of nothing more than bald assertions unsupported by any

27  facts specific to any Defendant regarding the alleged retaliatory conduct that was intended to convey

28  a "message of hostility" and chill protected speech.  (Compl., ¶¶ 130-133).  These allegations, too,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  are insufficient to support such a claim, specifically as to Ms. Sacks, a private attorney.  And, again,

2  they have failed to demonstrate that there is any private right of action for the damages they are

3  seeking under the California Constitution in this case.  (Compl., ¶¶  84, 137, prayer);  *Katzberg,* 29

4  Cal. 4th at 324-329.

5  In the absence of any admissible evidence that their free speech rights were improperly

6  chilled and they have a private right of action for damages, Count III (Art. I, Sec. 2 of the California

7  Constitution – Freedom of Speech) should also be stricken.

8  **E.  There Is No Private Right Of Action For An Alleged Violation Of California Education Code Section 51100 (COUNT IV)**

9

10  In Count IV, Plaintiffs assert a claim for "Parents' and Guardians' Right to Participate in the

11  Education of their Children (California Education Code § 51100)".  (Compl., ¶¶ 139-153).

12  California Education Code, Title 2, Chapter 1.5 entitled "Parental Involvement" sets forth various

13  policy statements relative to parental involvement in the education of their children.  *See* Cal. Educ.

14  Code §§ 51100 – 51133.  Further, the statute is policy driven and does not contain a private right of

15  action for "violation" of any of the stated policies, none of which are implicated by the grievances

16  that Plaintiffs have asserted in their Complaint.  (Compl., ¶¶ 144-148); Cal. Educ. Code § 51101.  A

17  California federal court has recently confirmed that there is no private right of action:

18  California Education Code section 51101 is not actionable because it merely states a policy.  Nowhere in the Education Code, dealing with parental involvement, is there a

19  provision for relief for violating public policy.

20  *Camfield v. Board of Trustees of Redondo Beach Unified Sch. Dist.*, No. 2:16-cv-02367,

21  2016 WL 7046594, at *4 (C.D. Cal. Dec. 2, 2016).  Accordingly, Count IV of the Complaint

22  should be stricken.

23  **F.  There Was No Violence Or Threat Of Violence To Support A Claim For Violation Of California Civil Code Section 52.1(b) – The Bane Act (COUNT V)**

24

25  When California enacted the Bane Act in 1987, the legislature made clear that the imperative

26  motivation behind passage of the statute was to address the increasing incidence of hate crimes in

27  California, i.e., "putting persons in fear of their safety".  Cal. Civ. Code § 52.1; *Venegas v. County of*

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  *Los Angeles*, 32 Cal. 4th 820, 845 (2004); *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998);

2  *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012).   The Bane Act focuses on the

3  existence of egregious and intentional acts of "threat[s], intimidation or coercion."  *Shoyoye*, 203

4  Cal. App. 4th at 959 ("[T]he statute was intended to address only egregious interferences with

5  constitutional rights, not just any tort.  The act of interference with a constitutional right must itself

6  be deliberate or spiteful.").  Notably, ***liability may not be based on speech alone***.  *Doe By and*

7  *Through Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1582 (N.D. Cal. 1993) ("plaintiff must

8  prove that the defendant(s) interfered (or attempted to interfere) with her rights by threats,

9  intimidations, or coercion (and that defendant(s) did so other than by speech alone, unless the speech

10  itself threatened violence).").

11      The elements of a claim under the Bane Act require a plaintiff to prove that defendant:  (1)

12  interfered with the plaintiff's constitutional or statutory right by threatening or committing violent

13  acts; (2) the plaintiff reasonably believed that such acts would be committed; (3) that the defendant

14  injured plaintiff to prevent him from exercising his constitutional or statutory right or to retaliate

15  against him for having exercised this right; (4) that plaintiff was harmed; (5) and that defendant's

16  conduct was a substantial factor in causing this harm.  *Austin B. v. Escondido Union Sch. Dist.*, 149

17  Cal. App. 4th 860, 882 (2007).  Here, however, Plaintiffs simply reincorporate their prior allegations

18  by reference and quote the Bane Act followed by a couple conclusory recitations of causation and

19  damages, rendering the allegations woefully inadequate.  (Compl., ¶¶ 154-160); *Perreault v. City of*

20  *Westminister*, No. 12-cv-2767-CAS ANX, 2013 WL 864783, at *7 (C.D. Cal. Mar. 7, 2013)

21  (granting motion to dismiss Bane Act claim where complaint incorporated other allegations by

22  reference and failed to allege specific allegations against each defendant).  This is clearly insufficient

23  to state a claim for a violation of the Bane Act.

24      In any event, Plaintiffs could never prevail on this claim as the conduct at issue (i.e., the

25  student interviews) is lacking the key element of violence.  *Cabesuela v. Browning-Ferris Indust.*, 68

26  Cal. App. 4th 101, 111 (1998) (affirming dismissal where allegations "in no way show[ed] actual

27  violence or intimidation by the threat of violence.").   Surely, if Plaintiffs had been exposed to some

28  violence, they would have alleged it.

NOTICE OF MOTION AND MOTION OF DEFENDANT MARLEEN SACKS TO STRIKE CLAIMS PURSUANT
TO CALIFORNIA ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**G.     There Was No Extreme Or Outrageous Conduct Necessary To Support A Claim For Intentional Infliction Of Emotional Distress (COUNT VI)**

The elements of a prima facie case of intentional infliction of emotional distress under California law are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982)).  There is a "high bar" for intentional infliction of emotional distress claims:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . .There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*See* Rest. (Second) Torts § 46, Comment (d); *see also Hughes v. Pair,* 46 Cal. 4th 1035, 1051(2009).

Looking to Plaintiffs' generalized allegations does not help save this claim.  Student-Plaintiffs J.B. and B.L. (the only two Plaintiffs with whom Ms. Sacks is alleged to have interacted) both claim that the interview – or in B.L.'s case, merely the summoning of his presence for an interview –  caused them fear of being in trouble ("J.B. left the interview confused, conflicted and very afraid"; "He felt the entire time he was in trouble"; "[B.L.] also was scared that he was in trouble") (Compl., ¶¶ 47, 49, 52).  The parent-Plaintiffs, in turn, make no allegations whatsoever to support a claim of intentional infliction of emotional distress.  "On its face, this conduct does not rise to the level of conduct that is 'atrocious[] and utterly intolerable in a civilized society.'" *Heine v. Vilsack*, No. 1:12-cv-01992, 2014 WL 744619, at *3 (E.D. Cal. Dec. 31, 2014) (citing *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998)); *see also Grant v. WMC Mortg. Corp.*, No. Civ-2101117, 2010 WL 2509415, at *3 (E.D. Cal. June 7, 2010) (holding complaint that merely

1 incorporated prior allegations by reference, failed to indicate specifically what conduct constituted

2 intentional infliction of emotional distress and lumped all defendants together was "plainly

3 insufficient" to plead a claim for intentional infliction of emotional distress).

4       Plaintiffs failure to plead any facts that would satisfy the high bar for an intentional infliction

5 of emotional distress claim alone merits that it be stricken.  *Steel v. City of San Diego*, 726 F. Supp.

6 2d 1172, 1191-92 (S.D. Cal. 2010) (dismissing claim where plaintiff "offers only conclusory

7 allegation that he suffered 'severe and extreme mental and emotional distress' as a result of

8 [defendant's] conduct."); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1046 (9th

9 Cir. 2011) (affirming dismissal of intentional infliction of emotional distress claim where facts

10 alleged were not inherently extreme and outrageous and failed to demonstrate facts that through

11 amendment of complaint would meet this standard); *Katzenbach v. Grant*, No. 1:04-cv-6501, 2005

12 WL 1378976, at *18 (E.D. Cal. June 5, 2007) (dismissing complaint in the first instance without

13 leave to amend for failure to plead extreme and outrageous conduct).

14     **H.**    **The Parent Plaintiffs Have No Standing To Assert Derivative Claims (COUNTS**

15         **I, III, IV, V and VI)**

16       To satisfy Article III standing and present a "case or controversy" before a federal court, a

17 plaintiff must allege: (1) injury-in-fact that is concrete and particularized, as well as actual and

18 imminent; (2) wherein injury is fairly traceable to the challenged action of the defendant; and (3) it is

19 likely (not merely speculative) that injury will be redressed by a favorable decision. *Friends of the*

20 *Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d

21 610 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d

22 351 (1992).  Here, however, the parents Plaintiffs' claims for violations of constitutional rights, the

23 Bane Act and intentional infliction of emotional distress are all derivative to those of their children.

24       The courts have held that parents do not have a basis to assert derivative claims for

25 constitutional violations absent a showing of having themselves been deprived of a constitutional

26 right.  *See Davis v. Folsom Cordova Unified School Dist.*, No. 215CV1714GEBKJNPS, 2015 WL

27 6821278, at *3 (E.D. Cal., Nov. 6, 2015) ("The fundamental problem with plaintiff's claims under 42

28 U.S.C. § 1983 here is that plaintiff fails to allege how any of the defendants deprived plaintiff

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF MOTION AND MOTION OF DEFENDANT MARLEEN SACKS TO STRIKE CLAIMS PURSUANT
TO CALIFORNIA ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   himself of a right secured by the Constitution or laws of the United States."). In *Davis*, for example,

2   the court rejected a mother's claims for retaliation under the constitutional right of equal protection

3   based upon allegations that her daughter was discriminated against and deprived of her right to

4   participate in school extra-curricular activities. *Id.* at *3. The court relied upon various precedential

5   authorities in reaching this determination. *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 755, 104 S. Ct.

6   3315, 82 L. Ed. 2d 556 (1984)) (holding parents lacked standing to assert claims premised upon

7   racial discrimination because "such injury accords a basis for standing only to 'those persons who

8   are personally denied equal treatment' by the challenged discriminatory conduct") (abrogated on

9   other grounds by *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014));

10  *Jones v. Beverly Hills Unified Sch. Dist.*, 2010 WL 1222016, at *4 n.8 (C.D. Cal. Mar. 24, 2010)

11  (concluding parent did not have standing to bring claim based on deprivation of parent's opportunity

12  to watch her daughter play basketball and witnessing daughter suffer disappointment in not making

13  the team); *Harry A. v, Duncan*, 351 F. Supp. 2d 1060, 1068 (D. Mont. 2005) (noting case law does

14  not "provide constitutional protection from any state action that has the ultimate effect of disturbing

15  the tranquility of the parent-child relationship. If they did, one can imagine endless claims brought

16  under § 1983, given the emotional immaturity of many teenagers and the frequently grating

17  interactions between high school officials and students."); *Morgan v. City of New York*, 166 F. Supp.

18  2d 817, 819 (S.D.N.Y. 2001) (granting motion to dismiss parent's complaint brought pursuant to §

19  1983 because there was no indication that the parent "suffered any harm other than emotional

20  distress due to the alleged discrimination against her daughter.").

21         The same principle can be applied to the parent-Plaintiffs' Bane Act claim. *See Austin B.*,

22  149 Cal. App. 4th at 882 (the first element to state a claim requires plaintiff to demonstrate that

23  defendant  interfered with the plaintiff's constitutional or statutory right by threatening or committing

24  violent acts). The parent- Plaintiffs have not alleged any interference with *their own* rights under the

25  Bane Act in order to meet Article III standing requirements.

26         The parent-Plaintiffs' claims for intentional infliction of emotional distress are no different:

27       It is often stated that whatever harms our children harms us. Implicitly relying upon
         that concept, [parents] sued the Los Alamitos Unified School District (the District),
28       and Mark Clabough, the former baseball coach at Los Alamitos High School (LAHS),

Case No. 3:16-cv-06634-WHO                           – 21 –

NOTICE OF MOTION AND MOTION OF DEFENDANT MARLEEN SACKS TO STRIKE CLAIMS PURSUANT
TO CALIFORNIA ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

on various claims arising out of alleged discrimination practiced against their son []. However, the trial court determined, in a series of rulings on demurrers and motions to strike, that no matter how personally aggrieved the [parents] felt as a result of defendants' treatment of their son, they failed to state any viable cause of action alleging direct injury to themselves, rather than to [their son], who is separately named as a plaintiff in this case. As a consequence, the trial court determined the [parents] lacked standing to pursue a cause of action in their own right. We agree and affirm the judgment.

*Kreitenberg v. Los Alamitos Unified Sch. Dist.*, 2012 WL 1374694, at *1 (Cal. Ct. App. Apr. 20, 2012) (unpublished opinion).

As Parent Plaintiffs have not alleged any cognizable deprivation of their own constitutional, statutory or common law rights, they have failed to plead an injury sufficient to vest them with standing in this case.  Accordingly, all of their claims should be stricken from the Complaint.

## VI.    CONCLUSION

For the foregoing reasons, Ms. Sacks respectfully requests that the Court grant her Motion to Strike Plaintiffs' Claims pursuant to California's anti-SLAPP statute.

DATED:  March 21, 2017

REED SMITH LLP

By: /s/ Monica M. Ortiz
    Lorenzo E. Gasparetti
    Mónica M. Ortiz
    Attorneys for Defendant Marleen Sacks