1 | SHANTA DRIVER, Michigan Bar No. P65007*
RONALD CRUZ, State Bar No. 267038
2 | United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
1985 Linden Street
3 | Oakland, CA 94607
(510) 875-4463 Fax: (313) 586-0089
4 | ronald.cruz@ueaa.net, shanta.driver@ueaa.net
Attorneys for Plaintiff
5 | *Appearing *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUPE VARGAS; X.M., by her next friend MARIA DÍAZ; J.B., by his next friend LEOCADIA RAMOS; and B.L., by his next friend TED LEVITON;<br><br>Plaintiffs,<br><br>vs.<br><br>BERKELEY UNIFIED SCHOOL DISTRICT, MARLEEN SACKS, LISA VAN THILLO, SHANNON FIERRO, and DOES 1-10,<br><br>Defendants. | **CASE NO.: 3:16-cv-06634-WHO**<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES**<br><br>• **42 U.S.C. § 1983 (First and Fourteenth Amendments)**<br>• **Title VI of Civil Rights Act of 1964**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs, by and through their

attorneys, UNITED FOR EQUALITY AND AFFIRMATIVE ACTION LEGAL

DEFENSE FUND (UEAALDF), state as follows:

### INTRODUCTION

1.      This complaint is brought on behalf of current and former English Language

Development (ELD) students of teacher Yvette Felarca in the Berkeley Unified

School District ("BUSD", "the District"), who were targeted for their race and national origin, interrogated, and intimidated by BUSD officials in Fall 2016.

2. Yvette Felarca is an immigrant Filipina-American BUSD teacher who is the target of a political witch-hunt by BUSD for fighting racism and defending immigrant rights in her off-duty time.

3. On September 21, 2016, Defendant Marleen SACKS, an attorney retained by BUSD, interrogated Plaintiff J.B., other ELD middle-school students, and attempted to interrogate B.L. in their non-native language of English, in the absence of and without notifying their parents. She did not tell them who she was or that she was an attorney. She interrogated these children about discussions of immigrant rights and slavery in Ms. Felarca's classroom and about their own political activities over the previous year.

4. On October 11, 2016, six days after Plaintiffs Lupe VARGAS and X.M. publicly spoke on behalf of their former teacher to BUSD officials at the BUSD Board of Education, Defendants Lisa VAN THILLO and Shannon FIERRO interrogated them about Ms. Felarca, their own political activities, and asked them prying questions to attempt to ascertain their immigration status and the immigration status of their families. VARGAS and X.M. are Mexican American.

5. The District has conducted racially-targeted interviews to intimidate Latina/o, black, and immigrant students from exercising their free speech rights.

6. The Plaintiffs bring this suit to defend the dignity and equality of immigrant students and their families in BUSD, stop discrimination, and defend freedom of speech.

1

**JURISDICTION AND VENUE**

2   7.   This is a civil rights action arising from Defendants' actions against Plaintiffs

3        beginning September 21, 2016 in Berkeley, California in Alameda County. This

4        action is brought pursuant to: 42 U.S.C. § 1983; the First and Fourteenth

5        Amendments to the United States Constitution; and Title VI of the Civil Rights Act

6        of 1964.

7   8.   Plaintiffs reside in Alameda County. All the Defendants reside and/or work in

8        Alameda County. The events, acts, and/or omissions complained of herein occurred

9        in Alameda County, California, and this action is properly assigned to the U.S.

10       District Court of California, Northern District.

11  9.   This Court has subject matter jurisdiction under 28 USC § 1331 and 28 USC §

12       1343(3).

13  10.  This action is timely filed within all applicable statutes of limitation.

14

**PARTIES**

15  11.  At the relevant times of this Complaint, Plaintiff Lupe VARGAS was a Latina

16       twelfth-grader at the Berkeley Unified School District's ("BUSD's") Berkeley High

17       School. Her family is from Mexico. She had been one of Felarca's English

18       Language Development (ELD) English and History students in 2011-12. She brings

19       these claims on her own behalf and as a Private Attorney General to vindicate

20       constitutional rights of the highest importance.

21  12.  X.M. is a minor and is represented by her next friend, María Díaz. At the relevant

22       times of this Complaint, X.M. was a Latina ninth-grader at Berkeley High School.

23       She and her family are from Mexico. She had been one of Felarca's ELD English

24

and History students in 2014-15. She brings these claims on her own behalf and as a Private Attorney General to vindicate constitutional rights of the highest importance.

13. J.B. is a minor and is represented by his next friend Leocadia Ramos. At the relevant times of this Complaint, J.B. was a Latino seventh-grader at BUSD's King Middle School. He and his family are from Peru. At the relevant times of this Complaint, J.B. was one of Felarca's ELD English and History students. He brings these claims on his own behalf and as a Private Attorney General to vindicate constitutional rights of the highest importance.

14. B.L. is represented by his next friend Ted Leviton. B.L. is a minor. At the relevant times of this Complaint, he was a seventh-grader at BUSD's King Middle School. He and his family are from the Ivory Coast. At the relevant times of this Complaint, B.L. was one of Felarca's ELD English and History students. He brings these claims on his own behalf and as a Private Attorney General to vindicate constitutional rights of the highest importance.

15. Defendant Berkeley Unified School District ("BUSD") is a public entity and an educational service agency established and maintained by the laws and constitution of the State of California, and owns, operates, manages, directs, and employs and/or is responsible for other Defendants in this action.

16. Defendant Marleen SACKS was at all material times counsel and an agent for BUSD who interrogated many of the child Plaintiffs. She is sued in her individual capacity.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES
CASE NO. 3:16-cv-06634-WHO                                                          4

17.   Defendant Lisa VAN THILLO was at all material times and is BUSD Assistant Superintendent of Human Resources. She reports directly to Defendant BUSD Superintendent Dr. Donald EVANS. She is sued in her individual capacity.

18.   Defendant Shannon FIERRO was at all material times and is a Vice Principal of BUSD's Berkeley High School. She is sued in her individual capacity.

19.   The true names and capacities of Defendants sued herein as DOES 1-10 are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to show these Defendants' true names and capacities when they are ascertained. At all material times, each of the DOE Defendants was an employee and/or agent of Defendant BUSD, and at all material times acted within the course and scope of that relationship. Plaintiff is informed and believes, and thereon alleges, that each Defendant so named was negligently, wrongfully, or otherwise responsible in some manner for the damages sustained by Plaintiff as set forth herein. Further, one or more DOE Defendants was at all material times responsible for the supervision and discipline of other Defendants, including DOE Defendants.

20.   Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein was negligently, intentionally, recklessly, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused damages to Plaintiff.

21.   Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all material times, an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things

herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to other Defendants, and ratified and/or authorized the acts or omissions as alleged herein, except as may be hereafter otherwise specifically alleged. At all material times, each Defendant was both jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional and statutory rights and other harm.

22.  At all material times, each Defendant acted under color of the laws, statutes, ordinances, policies, practices, customs, and usages of the State of California and BUSD.

23.  Plaintiff is informed and believes, and thereon alleges, that the unlawful actions complained of herein, as a result of which Plaintiff sustained the damages enumerated below, were and are violations of the laws of the United States.

24.  This action is timely filed within all applicable statutes of limitation.

**FACTUAL ALLEGATIONS**

25.  Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

26.  Rather than reflecting the historic commitment of the citizens of Berkeley to immigration and equality, the BUSD administration has been reducing the enrollment of minorities and immigrants in recent years. BUSD has recently begun home visits and adopted new application requirements to reduce access to minority,

1  immigrant, and low-income students who look to BUSD for an equal, quality

2  education. BUSD's leaders are abandoning the District's historical role as a pioneer

3  in integration and equality, and have been increasingly less accountable to the

4  minority, immigrant, and low-income students and families who give the District its

5  dynamic and progressive character.

6  27.  On June 29, 2016, BUSD officials Superintendent Donald Evans and Board of

7  Education President Beatriz Leyva-Cutler issued a public statement communicating

8  their intention to pursue disciplinary action against English Language Development

9  (also known as English as a Second Language), English, and History teacher Yvette

10  Felarca. This was clear retaliation for protesting the Nazis and other racists in

11  Sacramento during her off-duty time three days earlier. On June 30, 2016, the

12  District sent her a disciplinary letter that expressed hostility to her political views,

13  political affiliations, and off-duty political activities supporting equality for

14  immigrants and in favor of affirmative action.

15  28.  The contract between BUSD and Felarca's union, the Berkeley Federation of

16  Teachers (BFT), protects academic freedom and freedom of belief within BUSD. It

17  mandates a climate of openness and acceptance of diversity; it does not authorize

18  interrogations and fishing expeditions with children to censor any particular point of

19  view. The District's witch-hunt of Felarca also includes her immigrant students and

20  violates these precepts. The contract states:

21  Teachers shall be afforded the broadest freedom to teach within the State law, since
   evaluation of multiple sides of controversial issues is one of the means by which
22  students learn how to search for truth and develop the increased capacity to make
   sound and mature judgments. The controversial nature of a subject shall not bar its
23  discussion in the schools. In the interest of the freedom to teach, all employees shall
   be encouraged to express all views, including their own, honestly and in good faith.

24

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

1
2

To this end the Board will provide a teaching and learning atmosphere which is free from unreasonable censorship and artificial restraint upon free inquiring, learning and academic freedom.

3

Interrogations of Martin Luther King Middle School immigrant students

4
5
6
7
8

29.     On the morning of September 21, 2016, District officials began interrogating Felarca's current and former ELD students at King Middle School. That day, Defendant Marleen SACKS, an attorney representing BUSD, had BUSD officials pull the children from their classrooms and interrogated the children without notifying or obtaining consent from their parents.

9
10
11

30.     All the children were current or former ELD students of Felarca, for whom English was a second language. Most were born outside the United States. SACKS questioned the students in their non-native language of English.

12
13
14
15
16

31.     Plaintiff J.B. is a seventh-grader from Peru and is one of Felarca's current ELD students. On September 21, 2016, he was summoned out of his class and told to report to the school's office, where SACKS interrogated him. At no point beforehand was his mother, Plaintiff Leocadia RAMOS, or his family contacted to inform them about the interrogation or to obtain their consent.

17
18
19
20

32.     J.B., for whom English was his second language, was intimidated and terrified. SACKS opened the meeting by telling him that he could not tell his friends, teachers, or anyone else about the interview. He felt the entire time like he was in trouble.

21
22
23

33.     SACKS began to interrogate J.B. about Felarca. J.B. had Felarca as his teacher starting in sixth grade. SACKS asked him what discussions they had had about immigrant rights and slavery in Felarca's classroom. She asked him to relate in

24

1    detail any and all political protests he had participated in, when they occurred,

2    where they occurred, and what the messages of the protests were.

3    34.   SACKS made clear that discussions and activity about immigrant rights and

4        opposing racism inside and outside the classroom were not acceptable to the

5        District.

6    35.   J. B. left the interview confused, conflicted, and very afraid. He worried that he

7        would get in trouble if he told his mother, but he told her anyway because he was

8        extremely upset and hurt.

9    36.   At least six other children besides J.B. were summoned and brought before

10       Defendant SACKS to be interrogated on September 21, 2016. Upon information

11       and belief, nearly all, if not all, were current and former ELD students of Ms.

12       Felarca. The children came out of the interviews upset, scared, and confused.

13    37.   Plaintiff B.L. was summoned out of his math class to the office for an interrogation

14       on September 21, 2016. SACKS told him to return to class and said that he would

15       be questioned alone later. He also was scared that he was in trouble. His father, Ted

16       Leviton, and his family were never contacted beforehand to inform them about an

17       interrogation or to obtain their consent.

18    38.   Ted Leviton complained about this treatment to the BUSD Board of Education that

19       night.

20    39.   The District made sure to send a message of political intimidation to the family of

21       B.L.. A few days later, a representative of the District called Ted Leviton and told

22       him that any political protests that B.L. participated in were not sanctioned by the

23       District. Ted Leviton was already aware of this, and the District had no business

24

1   contacting him about political protests that he or his son were to participate in

2   outside of school hours.

3   40.   The District placed Felarca on involuntary administrative leave on the afternoon of

4   September 21, 2016. For the next six weeks, B.L., J.B., and other ELD students of

5   Felarca were denied a teacher who was trained to teach ELD students. They

6   underwent the trauma and disruption of losing a teacher who had had a positive

7   impact on them, and made to feel that the positive interactions and learning

8   opportunities that they had had with Felarca in her classroom were prohibited by the

9   District.

10   41.   Upon information and belief, between September 21, 2016 and November 2, 2016,

11   District officials interrogated or informed that it intended to interrogate twenty-one

12   of Felarca's twenty-two ELD students at King Middle School, as well as several of

13   her former ELD students who were eighth graders there. The District did not do so

14   with any of her current or former non-ELD students.

15   42.   The BUSD officials who conducted these interrogations included Defendants

16   Marleen SACKS, BUSD Assistant Superintendent of Human Resources Lisa VAN

17   THILLO, Berkeley High School Vice Principal Shannon FIERRO, and other DOE

18   individuals.

19   Interrogations and threats against Berkeley High School immigrant students

20   43.   On October 5, 2016, two Latina Berkeley High School students who were former

21   ELD students of Felarca, twelfth-grader Plaintiff Lupe VARGAS and ninth-grader

22   Plaintiff X.M., spoke to BUSD officials, including BUSD Superintendent Evans

23   and members of the BUSD Board of Education during the public comment period

24

of a Board of Education meeting. They demanded that BUSD allow Felarca back into the classroom and stop its political witch-hunt against her.

44. Both VARGAS and X.M. have families who are from Mexico.

45. Six days after they spoke out, VARGAS, X.M., and a third Latina student with whom they had once attended an immigrant rights protest were each individually pulled from their classrooms by BUSD officials at Berkeley High School. They were interrogated about Felarca and their own political activities. X.M. and VARGAS felt threatened by the District officials. The interrogations pried into their political activities, questions about their English ability, immigration status, and family members' national origin and immigration status.

46. X.M., VARGAS, and the other Berkeley High School students whom the District interrogated were questioned with the intent of intimidating them for their political activities on behalf of immigrant rights and/or in defense of their teacher, and against their ethnicity and immigration status.

47. On the morning of October 11, 2016, Defendants VAN THILLO and Berkeley High School Vice Principal Shannon FIERRO summoned X.M. out of her class and interrogated her for two class periods.

48. X.M. was a ninth grader and had been a student of FELARCA in seventh and eighth grade. VAN THILLO and FIERRO asked X.M. whether they had discussed immigration, slavery, gender equality, or protests in Felarca's class. They asked X.M. what protests she had participated in and what messages they advocated.

49. Defendants VAN THILLO and FIERRO asked X.M. where she lived. They also asked X.M. where she was born, where her siblings and mother were born. They

1    asked her if she had legal status in the United States. They asked her how long she

2    had been in this country. These questions were intended to intimidate X.M. and her

3    family from expressing their political views and activities in support of immigrant

4    rights and in support of their former teacher.

5    50.   X.M. was alarmed by the questions, since these were questions that are commonly

6          asked by immigration officials rather than by school officials. She tried to remain

7          calm throughout the interrogation but was afraid. When she told her mother about

8          what happened, her mother was alarmed and scared.

9    51.   The interviewers also directed X.M. not to tell anyone else about the interrogation.

10   52.   After the interview, X.M. was scared for her family and upset.

11   53.   Later that same day, Defendants VAN THILLO and FIERRO interrogated Plaintiff

12         Lupe VARGAS, a Latina twelfth-grader at Berkeley High School whose family is

13         from Mexico.

14   54.   A mere ten minutes before that interview, a representative from the District called

15         VARGAS' mother, Pompella Campos. This individual asked Campos for her

16         consent to question VARGAS about a "teacher at school." VARGAS had not had

17         Felarca as a teacher for more than four years, and Campos thought the questioning

18         would be about another teacher. If she had known that the interrogation was to

19         investigate Felarca, Campos would have refused. The phone call obtained Campos'

20         consent on false pretenses and was timed and designed not to alert VARGAS that

21         she was about to be interrogated about FELARCA.

22   55.   On October 11, 2016, VARGAS was told by her teacher to report to the office.

23         VARGAS thought she was being asked to see her counselor. While she waited at

24

1    the counselor's office, Defendant FIERRO invited VARGAS into her room.

2    FIERRO looked at VARGAS' grades with her and commented that they looked

3    good, making VARGAS believe that the she was in a meeting to discuss college.

4    56.   Defendant VAN THILLO walked into the room with a laptop and began to

5          interrogate VARGAS about Felarca. She asked VARGAS what grades she had

6          received in Felarca's class four years ago. She asked VARGAS about Felarca's

7          protest activities, about VARGAS' own participation in protests, whether students

8          in the class talked about protests, what books were in Felarca's room and whether

9          there were books there "about protests," and whether "controversial words and

10         political terms" were used. VAN THILLO asked VARGAS about school field trips

11         she had attended with Felarca that VAN THILLO knew had been approved by the

12         District.

13   57.   VAN THILLO asked VARGAS about a protest she had attended in Fall 2015 for

14         which she had parental permission, years after no longer being Felarca's student

15         and a on day that she did not have school. Despite knowing that she had her

16         parents' permission to attend the protest, VAN THILLO asked her intimate details

17         about that day, including whether she ate pizza that day, making clear that the

18         District had investigated and was interested in her participation in that protest, and

19         would investigate her if she attended future protests.

20   58.   VAN THILLO then asked VARGAS where her parents came from, and whether

21         they spoke English. VARGAS understood these questions as attempts to intimidate,

22         scare, and threaten VARGAS and her family.

23

24

59. During and after the interrogation, VARGAS was distraught and angry. She was manipulated into participating in a surprise interrogation, and scared because she had been singled out for questioning. She was scared that the school would do something against her family. She was scared that the school might arrest her for speaking out at School Board meetings. VARGAS was beside herself that her words might lead to her little brother or other members of her family getting interrogated, or worse. She called her mother right away, distraught.

60. VARGAS went to a staff member she trusted and, with that staff member, returned to FIERRO to complain about the interrogation. FIERRO took the staff member aside and spoke to her outside of VARGAS' presence. FIERRO continued to attempt to intimidate VARGAS and told her that she was in trouble because she had told someone else about the interview, and that FIERRO would have to report her to VAN THILLO.

61. VARGAS told FIERRO that she had manipulated VARGAS and demanded that her interview not be used in any way against herself, her former teacher, or her family. FIERRO proceeded to type things that VARGAS said, and VARGAS demanded that she stop. FIERRO said that the District might interrogate VARGAS' brother, too.

62. BUSD officials conducted interrogations of other Berkeley High School students who had formerly been ELD students of Felarca. Upon information and belief, nearly all, if not all, these students were Latina/o.

63. Defendants' actions, beginning with the witch-hunt of Felarca and continuing with the racially-targeted interrogations of Felarca's current and former ELD students,

1  send a hostile message to immigrant and Latina/o students and parents that they

2  would be targeted and driven out of BUSD if they acted against racism and

3  defended immigrant rights.

4  64.  Defendants targeted and threatened Plaintiffs VARGAS, X.M., and other students

5  because they had lawfully exercised their right to free speech.

6  65.  On information and belief, Defendant BUSD, its policymakers and managing

7  agents and employees including, but not limited to, Defendants SACKS, VAN

8  THILLO, and FIERRO, and other as-yet unknown employees and agents of

9  Defendants BUSD, negligently, recklessly, otherwise wrongfully and with

10  deliberate indifference to the rights of BUSD students, parents, and guardians,

11  including Plaintiffs, failed to properly screen, investigate, hire, train, supervise,

12  and/or discipline unknown employees and Defendants.

13  66.  Defendants' actions and omissions were done under color of law and within the

14  course and scope of their employment, and were done pursuant to unconstitutional

15  customs, policies, and procedures of Defendants BUSD.

16  67.  Defendant BUSD is also responsible for Plaintiffs' injuries through its own acts and

17  omissions, negligent or otherwise, by failing to properly and adequately investigate,

18  train, supervise, monitor, instruct, and discipline their employees, officers, and

19  other personnel, including the officers identified herein.

20  68.  At all material times, and alternatively, the actions and omissions of each Defendant

21  were intentional, knowing, wanton and/or willful, reckless, malicious, deliberately

22  indifferent to and with conscious disregard for the rights of Plaintiffs and others,

23

24

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES
CASE NO. 3:16-cv-06634-WHO                                                                 15

1   done with oppression, fraud, malice, actual malice, grossly negligent, negligent, and

2   objectively unreasonable.

3   69.   As a direct and proximate result of each Defendant's acts and/or omissions as set

4   forth above, Plaintiffs sustained the following injuries and damages, past and future,

5   among others:

6       a.   Severe emotional distress;

7       b.   Lost educational time;

8       c.   Violation of federal constitutional rights;

9       d.   All compensatory and punitive damages, attorneys' fees, costs, and

10   penalties, recoverable under 42 U.S.C. §§ 1983, 1988, and as otherwise allowed

11   under United States statutes, codes, and common law.

12   **COUNT ONE: Racial and National Origin Discrimination**
**(Fourteenth Amendment to U.S. Constitution; 42 U.S.C. § 1983)**
13   **AGAINST DEFENDANTS SACKS, VAN THILLO, FIERRO, and DOES 1-10**

14   70.   Plaintiffs reallege each and every paragraph in this complaint as if fully set forth

15   here.

16   71.   The Fourteenth Amendment to the U.S. Constitution prohibits the States from

17   "deny[ing]… any person within its jurisdiction the equal protection of the laws."

18   Section 1983 creates a private right of action against "[e]very person who, under

19   color of any statute… of any State… subjects, or causes to be subjected, any citizen

20   of the United States or other person within the jurisdiction thereof to the deprivation

21   of any rights, privileges, or immunities secured by the Constitution and laws." 42

22   U.S.C. § 1983.

23

24

72. The Plaintiffs Lupe VARGAS, X.M., J.B., and B.L. are immigrants and/or come from families who are immigrants, and/or are perceived to be such.

73. The Plaintiffs Lupe VARGAS, X.M., and J.B. are Latina/o. Plaintiff B.L. is a black immigrant from Africa.

74. Upon information and belief, nearly all, if not all the students whom the Defendants interrogated between September 21, 2016 and November 2, 2016 were current and former ELD students of Felarca.

75. Defendants selected the student Plaintiffs for interrogation because of their race, perceived race, national origin, and/or perceived national origin.

76. Defendants selected the most vulnerable members of BUSD's student population— minority and immigrant students—for interrogation.

77. The interrogations of Felarca's current and former immigrant students denied student Plaintiffs equal access to education based on their race and national origin.

78. Interrogating Plaintiffs VARGAS and X.M. about where they were born and about the citizenship and English proficiency of their family members was a racist threat and was done because of their race, national origin, and/or perceived national origin.

79. The interrogations were intentionally conducted without the children's parents present and without their consent, with deliberate indifference toward these minority and immigrant children's right not to be threatened and intimidated by school officials.

80.  As a direct and proximate result of the acts and/or omissions of Defendant BUSD, its officials, its policies, and/or practices, Plaintiffs sustained damages as set forth at ¶ 69 above.

81.  Defendants SACKS, VAN THILLO, FIERRO, and DOES 1-10 subjected Plaintiffs to their wrongful conduct and deprived them of rights described herein knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiffs and others would be violated by their acts and/or omissions.

82.  The conduct of Defendants SACKS, VAN THILLO, FIERRO, and DOES 1-10 entitles Plaintiffs to exemplary and punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law.

83.  As a direct and proximate result of the acts and/or omissions of Defendants as set forth above, Plaintiffs sustained damages as described in ¶ 84.

84.  Plaintiffs are entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988(b).

**COUNT TWO: Racial and National Origin Discrimination, Hostile Educational Environment, and Retaliation (Title VI of Civil Rights Act of 1964) AGAINST DEFENDANT B.U.S.D.**

85.  Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

86.  Title VI of the Civil Rights Act of 1964 states: "[N]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

87.  BUSD receives federal funds.

88.   Upon information and belief, nearly all, if not all, the students whom the Defendants interrogated between September 21, 2016 and November 2, 2016 were current and former ELD students of Felarca.

89.   Defendants selected the student Plaintiffs for interrogation because of their race, perceived race, national origin, and/or perceived national origin.

90.   The interrogations of Felarca's current and former immigrant students denied Plaintiffs equal access to education based on their race and national origin.

91.   Interrogating Plaintiffs VARGAS and X.M. about where they were born and about the citizenship and English proficiency of their family members was a threat and was done because of their race, national origin, and/or perceived national origin.

92.   The interrogations were intentionally conducted without the children's parents present and without their consent, with deliberate indifference toward these minority and immigrant children's right not to be threatened and intimidated by school officials.

93.   As a direct and proximate result of the acts and/or omissions of Defendant BUSD as set forth above, Plaintiffs sustained damages as described in ¶ 69.

94.   Plaintiffs are entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988(b).

**COUNT THREE: Violation of Freedom of Speech**
**(First Amendment to U.S. Constitution; 42 U.S.C. § 1983)**
**AGAINST DEFENDANTS SACKS, VAN THILLO, FIERRO, and DOES 1-10**

95.   Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

96.   The First and Fourteenth Amendments to the United States Constitution protect the rights of freedom of speech and freedom of association.

97.   In the United States, "it can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 506 (1969).

98.   Students have the right to speak in their classroom and participate in the protests in non-school hours free from restrictions, intimidation, and retaliation from the District.

99.   Defendants sent a hostile message to Plaintiffs that it disfavored and/or prohibited speech against racism and in support of immigrant rights inside and outside the classroom.

100.  Defendants singled out BUSD's minority and immigrant students for interrogation, in order to intimidate the most vulnerable students and families in the District and to chill the free speech of those students and families who have the most grievances with the District.

101.  The interrogations of Plaintiffs VARGAS, X.M., and other students were in retaliation for exercising their rights to complain about racial and national origin discrimination.

102.  The interrogations of Felarca's current and former immigrant students conveyed a message of hostility toward Plaintiffs' right to engage in speech against racism and for immigrant rights.

103. As a direct and proximate result of the acts and/or omissions of Defendant BUSD, its officials, its policies, and/or practices, Plaintiffs sustained damages as set forth at ¶ 84 above.

104. Defendants SACKS, VAN THILLO, FIERRO, and DOES 1-10 subjected Plaintiffs to their wrongful conduct and deprived them of rights described herein knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiffs and others would be violated by their acts and/or omissions.

105. The conduct of Defendants SACKS, VAN THILLO, FIERRO, and DOES 1-10 entitles Plaintiffs to exemplary and punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law.

106. As a direct and proximate result of the acts and/or omissions of Defendants as set forth above, Plaintiffs sustained damages as described in ¶ 69.

107. Plaintiffs are entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988(b).

## JURY DEMAND

108. Plaintiffs hereby demands a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray:

1.    Compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable;

2.    Punitive damages under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable;

3.    All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988, and as otherwise may be allowed by federal law;

4.  Such other and further relief as supported by the evidence in this case and as this Court and/or the jury may deem appropriate.

By Plaintiff's Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND (UEAALDF)

BY:     /s/ Shanta Driver
Shanta Driver (Michigan Bar No. P65007)*
Ronald Cruz (State Bar No. 267038)
1985 Linden Street
Oakland, California 94607
(510) 875-4463 (Ronald Cruz)
*Appearing *pro hac vice*

Dated: September 13, 2017