UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUPE VARGAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BERKELEY UNIFIED SCHOOL DISTRICT, et al., <br><br> Defendants. | Case No. 16-cv-06634-WHO <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 70 |

## INTRODUCTION

Plaintiffs, former and current students of Yvette Felarca at the Berkeley Unified School District ("BUSD"), bring this action against BUSD, two of its school administrators, and its outside counsel, Marleen Sacks, for violating the students' constitutional rights under the First and Fourteenth Amendments and their civil rights under Title VI of Civil Rights Act of 1964. These claims stem from the manner in which defendants investigated potential professional misconduct by Felarca. Sacks now moves to dismiss claims alleged by plaintiffs Vargas, X.M., and B.L. Vargas and X.M. concede that they have not alleged any facts at all regarding Sacks, and do not oppose the motion. B.L.'s only allegations in the First Amended Complaint regarding Sacks are that he was pulled from his classroom, was sent back to his classroom by Sacks without an interview, and feared that he might be interviewed in the future. These facts do not demonstrate Article III standing for B.L.'s claims against Sacks; B.L. has not suffered an injury in fact and cannot plausibly allege a constitutional violation. There is no need for oral argument; I GRANT Sacks's motion.

## BACKGROUND

This case arises out of an investigation into the potential misconduct of Yvette Felarca, a

1  teacher at King Middle School in Berkeley who teaches both English Language Development

2  ("ELD") and History.  On June 26, 2016, in her free time, Felarca participated in a violent and

3  widely publicized political protest in Sacramento with members of the group By Any Means

4  Necessary that was intended to "shut-down" a separate protest held by a neo-Nazi group.  First

5  Amended Complaint ("FAC") ¶ 27 (Dkt. No. 68); *see* RJN Ex. 5 (Dkt. No. 31-6) (CNN article "At

6  least 10 injured – some stabbed – at California rally, authorities say").  Following the Sacramento

7  protest, BUSD started receiving threats and calls from members of the public calling for Felarca's

8  dismissal, apparently because of her controversial political and protest activity.  RJN Ex. 2

9  (Berkeleyside.com article) (Dkt. No. 31-3).

On September 21, 2016, Sacks, an attorney for the school district, began conducting interviews of some of Felarca's current and former students about her conduct in and out of the classroom.  *Id.* ¶ 29.  These students were pulled from class.  At the beginning of these interviews, they were told that they could not tell their friends, teachers, or anyone else about the interviews.  *Id.* ¶ 32.  B.L., an immigrant student from the Ivory Coast, was pulled from class for an interview but, after reporting to the principal's office and waiting, he was sent back to class by Sacks, who told him she would interview him alone later.  *Id.* ¶ 37.  B.L. alleges that he was confused and felt like he was in trouble.  *Id.*

Felarca was placed on paid administrative leave later that day and remained on leave for the next six weeks.  *Id.* ¶ 40.  B.L.'s father complained about the student interviews at a School Board meeting that evening.  *Id.* ¶ 38.  Later, BUSD contacted B.L.'s father and "told him that any political protests that B.L. participated in were not sanctioned by the District."  *Id.* ¶ 39.  Over the course of the next several weeks, Sacks and school officials interviewed, or indicated they intended to interview, many of Felarca's current and former students.  *Id.* ¶ 41.  These interviews were disproportionately conducted with Felarca's ELD students, who are largely immigrant students and non-native English speakers.  *Id.* ¶¶ 41, 63, 74.

Plaintiffs filed this action on November 16, 2016, alleging a slew of federal and state claims.  Dkt. No. 1.  I granted defendants' motion to strike plaintiff's state claims under California's "anti-SLAPP" statute, California Code of Civil Procedure § 425.16.  Dkt. No. 63.  I

granted in part and denied in part defendants' motion concerning the federal claims, and gave leave to amend. *Id.* Plaintiffs filed their First Amended Complaint, Dkt. No. 68, and Sacks moves to dismiss claims alleged against her by plaintiffs Vargas, X.M., and B.L. Dkt. No. 70.

**LEGAL STANDARD**

**I.     MOTION TO DISMISS**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir.1989).

**DISCUSSION**

Plaintiffs Vargas and X.M. do not oppose Sacks's motion as to their claims. Sacks neither summoned them to be interviewed nor interviewed them. Their claims against Sacks are DISMISSED with prejudice.

In general, to establish a claim for relief under § 1983 plaintiffs must allege "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). When plaintiffs "seek to hold an individual defendant personally liable for damages" under § 1983, they "must set forth specific facts as to each individual defendant's" conduct. *Leer v. Murphy*, 844 F.2d 628, 634 (1988). "Sweeping conclusory allegations will not suffice." *Id*.

Plaintiffs bring claims for racial and national origin discrimination and violation of freedom of speech under U.S.C. § 1983 against all defendants. Sacks argues that B.L.'s claims against her must be dismissed because plaintiffs have failed to plead sufficient facts to state these claims. That is true. B.L. lacks standing to pursue his claims because he has not alleged a cognizable injury in fact.

Plaintiffs allege that they were selected for interviews on the basis of their race, national origin, or perceived national origin; Felarca's ELD students, who are largely immigrant students, were disproportionately interviewed compared to her mainstream history students. *Id.* ¶ 30, 41. They further allege that defendants, by conducting these interviews and asking them prying questions about whether they had participated in immigrant-right protests and in some cases their family's immigration status, sent a "hostile message to Plaintiffs that it disfavored and/or prohibited speech against racism in support of immigrant rights inside and outside the classroom." *Id.* ¶ 129. It is within that context that B.L. alleges that he was pulled from class for an interview but was later dismissed without an interview by Sacks, who told him that she would interview him later. *Id.* ¶ 37. He fails to state a cognizable injury of any sort.

To have Article III standing, a plaintiff must allege facts that satisfy three elements: (i) the plaintiff suffered an injury in fact, (ii) that is fairly traceable to the challenged conduct of the

4

defendant, and (iii) that is likely to be remedied by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The injury in fact requirement is the "first and foremost" of the three elements. *Id*. To constitute injury in fact, the plaintiff must demonstrate that the defendant infringed on the plaintiff's legally protected interest in a "concrete and particularized" manner that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A particularized injury affects the plaintiff in a personal and individual way, and a concrete injury "must actually exist." *Spokeo*, 136 S. Ct. at 1548.

The only injury that B.L. alleges in the complaint is the fear that he was in trouble after being called to the office. FAC ¶ 37. A reasonable inference is that he feared he might be called back to the office at a later date. Opp'n at 7. Fear of harm is not sufficient to establish standing and B.L. asserts no facts in his Complaint or Opposition to the motion that suggest that he suffered any other harm caused by Sacks. *See Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (noting that "subjective chill" is not "an adequate substitute for . . . a threat of specific future harm."); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013) ("respondents lack Article III standing because they cannot demonstrate that the future injury they purportedly fear is certainly impending").

In the context of a First Amendment 1983 claim, a threat of retaliatory action may be sufficient to bring a retaliation claim. "[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009). The alleged chilling effect, however, must past an objective test – whether the alleged behavior "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Center v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). Merely being called to the principal's office and being sent back to class by an unknown authority figure is not the type of action that could chill a person of ordinary firmness.

I gave plaintiffs detailed direction on the deficiencies in the original Complaint in the Order Re Motions to Dismiss and Strike. Dkt. No. 63. The facts alleged with, reasonable inferences therefrom, read in the light most favorable to B.L. do not come close to giving him

5

standing, let alone constitute a constitutional violation resulting from Sacks's conduct. Nothing in B.L.'s Opposition to the motion suggests that he could plead additional facts that would make these claims plausible. Accordingly, I will dismiss his claims with prejudice.

## CONCLUSION

Sacks's motion to dismiss is GRANTED. The claims of plaintiffs Vargas, X.M., and B.L. against Sacks are DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: November 2, 2017

William H. Orrick
United States District Judge